**WHITE, Collector of Internal Revenue, v. BINGHAM et al.**

Circuit Court of Appeals, First Circuit.
March 26, 1928.

No. 2183.

**I. Trial ☞176—Defendant by request for directed verdict as to one issue did not waive right to have different questions submitted to jury.**

In action against collector of internal revenue to recover additional federal estate tax claimed to have been illegally assessed and collected, defendant, by filing motion for directed verdict for amount of tax on certain stock for which he was willing to confess judgment, did not thereby waive right to have question of validity of alleged gift to another passed on by the jury, pursuant to written request for instructions on such issue.

**2. Internal revenue ☞38(13)—Validity of gift of deceased more than two years before death should be submitted to jury, under undisputed facts authorizing divergent inferences.**

Where facts relative to deceased's gift to wife more than two years prior to his death of certain stock were undisputed, but divergent inferences might be drawn therefrom, validity of alleged gift should have been submitted to jury.

**3. Internal revenue ☞38(13)—Validity of alleged gift by deceased more than two years before death, as bearing on liability for federal estate tax, held for jury.**

In action to recover additional federal estate tax claimed to have been illegally assessed and collected, evidence, together with reasonable inferences therefrom, relative to validity of alleged gift by deceased more than two years prior to his death, *held* sufficient to require submission of case to jury.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Action by Norman W. Bingham and others, executors of the will of King Upton, deceased, against Thomas W. White, Collector of Internal Revenue. Judgment for plaintiffs, and defendant brings error. Judgment vacated, verdict set aside, and case remanded, with directions.

William T. Sabine, Jr., of Washington, D. C. (Frederick H. Tarr and J. M. Leinenkugel, both of Boston, Mass., and C. M. Charast, of Washington, D. C., on the brief), for plaintiff in error.

Norman W. Bingham, Jr., of Boston, Mass. (George S. Fuller, of Boston, Mass., on the brief), for defendants in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an action by the executors of the will of King Upton, who died February 27, 1921, to recover an additional federal estate tax of $37,583.20, claimed to have been illegally assessed and collected by the defendant from the plaintiffs as such executors. At the close of the evidence, the judge of the District Court directed a verdict for the plaintiffs in the full amount sued for, with interest.

The plaintiffs claim that the Commissioner of Internal Revenue included in the gross estate of the decedent, and subject to a federal tax, certain shares of stock of the American Glue Company and of the National Glue Company alleged to have been given by him in 1918, more than two years prior to his death, to his wife, Annie D. Upton, and to his daughter-in-law, Lorna G. Upton. The defendant admitted that the stock given to the daughter-in-law should not have been subjected to a tax, and the sole question before the court was whether the decedent made a valid gift to his wife.

The defendant, at the close of the testimony, filed a motion for a directed verdict for the plaintiff for $4,050.40, with interest from March 13, 1926, this being the amount of the tax collected on the stock transferred to the daughter-in-law, and which the defendant admitted was not taxable as a part of the estate. The defendant also requested certain instructions which the court refused to give; to which refusal, and to the denial of his motion for a directed verdict, he excepted. The plaintiffs also filed a motion for a directed verdict, and the court directed a verdict for the plaintiffs in the sum of $39,544.78, being the full amount claimed, with interest, to which the defendant excepted. He has assigned as error the direction of a verdict for

the full sum sued for, and also the failure to give the instructions requested by him, and the overruling of his motion for a directed verdict.

We are met at the outset by the contention that, both parties having moved for a directed verdict, this court is concluded by the finding of the District Court, provided there was any evidence to sustain it. Linsky v. United States (C. C. A.) 6 F.(2d) 869, decided in this circuit, is cited in favor of this contention. It will be noted that the defendant in that case went no further than to file a motion for a directed verdict, and did not file any written request for instructions. · In its decision in that case the court relied upon Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654, and Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038. In Empire State Cattle Co. v. Atchison Railway Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70, Chief Justice White, who drew the opinion in Beuttell v. Magone, supra, said, at page 8 (28 S. Ct. 609):

"If, on the other hand, it be that, although the plaintiffs had requested a peremptory instruction, the right to go to the jury was not waived in view of the other requested instructions, then our inquiry has a wider scope— that is, extends to determining whether the special instructions asked were rightly refused, either because of their inherent unsoundness or because, in any event, the evidence was not such as would have justified the court in submitting the case to the jury."

He further said that there was nothing in that case to sustain the view "that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting or the inferences to be drawn from the testimony are divergent. To hold the contrary would unduly extend the doctrine of Beuttell v. Magone, by causing it to embrace a case not within the ruling in that case made."

He cited with approval the opinion of Circuit Judge Severens in Minahan v. Grand Trunk Western Railway Co. (C. C. A.) 138 F. 37, and also the concurring opinion of Circuit Judge Shelby in McCormick v. National City Bank of Waco (C. C. A.) 142 F. 132, 6 Ann. Cas. 544.

[1] In the present case the requested instructions were pertinent to the submission to the jury of the question of whether the alleged gift to the wife was a valid and completed one. By filing a motion for a directed verdict for the amount of the tax on the stock transferred to the daughter-in-law, for which he was willing to confess judgment, the defendant did not waive the right to have the question of the validity of the alleged gift to the wife passed upon by the jury. His requested instructions called for ·a statement of the law to guide the jury in its consideration of the validity of the alleged gift to the wife, and· it is clear that he intended, in the event his motion for a directed verdict was denied, to ask that these instructions be given to the jury to govern them in their determination of the validity of this gift.

The parties have · filed a statement of agreed facts, which was made a part of the bill of exceptions by reference, and with the oral testimony . at the trial constitutes the evidence in the case.

[2] The question for our determination is whether this evidence, with all the reasonable inferences to be drawn from it, was of such a clear and conclusive character as to justify the presiding judge in, directing a verdict for the plaintiffs, and not submitting to the jury the determination of the validity of the gift to the wife. The facts were undisputed, but it is apparent that divergent inferences might be drawn therefrom. If there were reasonable inferences that might be drawn by the jury from the testimony and the acts of the decedent which would sustain a verdict for the defendant, the validity of the alleged gift should have been submitted to the jury.

In C., M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 478, 46 S. Ct. 564, 566 (70 L. Ed. 1041) the Supreme Court, speaking through Justice Butler, said: "It is the duty of the trial judge to direct a verdict for one of the parties, when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding"—citing Baltimore & Ohio Railway Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169, 69 L. Ed. 419.

[3] We think that the testimony. and the reasonable inferences which the jury might draw therefrom were sufficient to support a verdict in favor of the defendant.

Congress, on October 3, 1917, enacted a new Income Tax Law , (40 Stat. 300–338), which, in addition to the normal tax of 2 per cent., imposed heavy additional surtaxes upon incomes. The 'decedent's income was largely derived from dividends on the stock of the American Glue Company and the National Glue Company, and amounted in 1917 to $65,724, and in 1918 to $88,000.

Some time in September, 1918, he consulted his attorney, who testified that he said that he had in mind giving his wife enough, so that her income would be approximately equal to his, and stated in substance: "I have figured that, if I do that, the family income taxes will be appreciably reduced."

Before making any transfer of stock to his wife, the decedent, September 21, 1918, secured from her a general power of attorney, constituting and appointing him her true and lawful attorney, "for me, and in my name, to indorse for deposit or collection checks, notes, and other negotiable instruments running to my order; to sign checks or drafts on any bank account that may stand in my name, to sign or indorse stock certificates and negotiate the purchase and sale thereof, hereby granting unto my said attorney full power and authority in my name and behalf to execute, acknowledge, and deliver any instruments in writing which may be necessary and proper in the premises, also to represent me at any meeting of stockholders of any corporation in which I may be a stockholder, and otherwise to act in the premises as fully and effectually as I might do if personally present."

She also executed, on September 23, 1918, a power of attorney to George H. Crowell, secretary of her husband, empowering him to sign checks on the Webster & Atlas Bank account, which was opened in her name after the transfer to her was made.

In a letter to his counsel, written a short time before the transfer, the decedent stated:

"I am anxious to get this matter closed up, as far as the American stock goes, before the 1st of November. Have been spending most of to-day reading the new tax bill as it left the House of Representatives, and there is no question in my mind but that it is imperative for me to do so."

The jury might have found that he did not intend to part with the dominion and control over the stock which he contemplated transferring to his wife, nor of the dividends to be received thereon, because before he made the transfer he had his wife execute the power of attorney to him, which gave him as full control and dominion over the stock and the dividends to be paid thereon as he had before the transfer. That this inference would not be unreasonable, but justified by the acts of the parties, is supported by the following facts: That the certificates of stock were never delivered to her, but to the secretary of the decedent, who it is claimed acted also as her secretary, who deposited some of them in the security box of the decedent at the State Street Trust Company, to which she had no access, although she testified that they were deposited at the Webster & Atlas National Bank; that about one-half in value was used by the decedent as collateral for loans made by him at different banks; that a bank account was opened in her name at the Webster & Atlas National Bank, and a check book containing blank checks on this bank, with her printed signature thereon and a space beneath it, followed by the word "Attorney," was left in the custody of the decedent and his secretary; that the decedent drew upon this account to pay off loans due from him at other banks, and interest; and that about a week before the decedent's death she transferred to him 3,300 shares of the American Glue Company stock, which was transferred upon the books of the company and stood in his name at his death.

These facts, and others in the record, would, in our opinion, furnish sufficient ground for a reasonable inference to be drawn by the jury that the alleged gift to the wife was but a sham and a subterfuge, devised solely for the purpose of 'relieving the decedent from the payment of the income tax imposed by the Revenue Act of 1918, and that the decedent had not parted with full dominion and control over the objects of the alleged gift, but by means of the power of attorney which had been executed by his wife was still enabled to retain full control and dominion over the stock transferred, as well as the dividends thereon, and to use the same for his own personal benefit as he saw fit.

Whether the alleged gift was a valid and completed one was a question of fact for the jury, and one with which they were peculiarly well fitted to deal, under proper instructions from the court as to the necessity of proving donative intent, delivery, and the release by the decedent of full control and dominion over the stocks transferred. We think there was error in withdrawing the case from their consideration, and directing a verdict for the plaintiffs.

The judgment of the District Court is vacated, the verdict set aside, and the case remanded to that court, with instructions to grant a new trial; the plaintiff in error to recover costs in this court.

ANDERSON, Circuit Judge (dissenting). I think the court below was right. I can see no evidence whatever to control the agreed fact that, in the fall of 1918, King Upton

transferred the stocks in question on the books of the corporations to his wife, pursuant to a declared purpose thus to make her a gift of about half of his holdings. The gift was complete; the transfer on the books was delivery (Roberts' Appeal, 85 Pa. 84; Colton v. Williams, 65 Ill. App. 466; Sanders v. Jarvis, 221 Ill. App. 550); and there was other and entirely uncontradicted evidence of physical delivery to Crowell, who was (again on uncontradicted evidence) secretary or agent of the donee. Upton acted under the advice of a reputable lawyer, a witness in the case, who, in writing, advised that any transfer made "should be an absolute transfer, * * * and should not be impressed with any trust or actual obligation of any kind in your favor." To this Upton promptly replied, in writing: "You are entirely correct that the stock transferred is not impressed with any trust of [or] actual obligation of any kind in my favor."

Five credible witnesses testified to the same effect: Mrs. Upton, her son, King Upton's brother, Crowell, secretary of both Mr. and Mrs. Upton, and Upton's attorney. There is not a scintilla of contradictory testimony to the effect that Upton ever spoke of the transfer as other than an outright gift, or otherwise so limited that a trust could be found and enforced under the doctrine laid down in English v. English, 229 Mass. 11, 118 N. E. 178, and similar cases. And this is the test: Upton, in case of disagreement with his wife, could not have recovered the stocks or taken any part of the dividends thereon. His power of attorney from her was revocable at her will; it gave him no beneficial interest in her property or right to use his agency for his own benefit; no agent may lawfully use his powers as agent, except for the benefit of his principal. The attempt of the husband so to do in English v. English, supra, was held unavailing. The ruling of the majority that the power of attorney gave Upton "as full control and dominion over the stock and the dividends to be paid thereon as he had before the transfer" is utterly untenable. It gave him no control, except for the benefit of Mrs. Upton. It was no different in legal aspect from Mrs. Upton's authorization to Crowell to sign checks on her bank account; of course, Crowell did not thereby get any right to apply her money to his own use. The power of attorney lends no support whatever to the broad ruling of my brethren that a jury might as "a reasonable inference" have found "the alleged gift to the wife * * * but a sham and a subterfuge. * * *"

Nor, on analysis, do the other dealings with the shares and the dividends referred to in the majority opinion. These dealings were all subsequent to the transfer and were all entirely consistent with the natural conduct of a loyal wife in a family in which mutual accord and co-operation obtained. It is not necessary for a donee wife to quarrel with her donor husband in order to sustain her title to his gifts. She may pay all or any part of the household expenses and loan her husband from income or principal, without grounding any inference that she is not dealing with her own and not his property. Her conduct in this regard was exactly what one would have expected in a united family, if she had inherited the same property from her father. A wife's dealing with her own in wifely fashion is not evidence that her title is grounded in fraud.

As noted above, the government cannot tax as the decedent's what the executors could not recover and distribute as part of his estate; I cannot conceive that, on this record, any court would allow a finding in favor of the executors of Upton's estate against Mrs. Upton for these stocks to stand; so to do, would be to rule that the tribunal of fact might find perjury by practically all the witnesses, and this without any evidence to support such an extraordinary conclusion. Euphemisms about "reasonable inferences" should not be permitted to disguise the real issue sent back for trial—fraud supported by perjury—not a possibly honest and inadvertent failure to complete a partially formed purpose to make a gift.

The majority opinion takes its color and start from Upton's fully disclosed desire to reduce the family income taxes. But this motive, whether from a moral and civic standpoint worthy or unworthy, has no tendency to show that he did not in fact and in law so distribute his large property as to effect this as well as his other purposes. Parenthetically, I indulge in no criticism whatever of this motive; it is almost universal; it frequently is but the proper balancing or adjustment of public and family duties. Vaughan v. Riordan (D. C.) 280 F. 742. If it has any bearing at all on this case, it bears against the government; for Upton (as noted above) acted under the advice of counsel, and knew he could have no "strings attached," if his tax-reducing purpose was to be effected. Yet my brethren now say that Upton kept such a string on these transferred shares that title

thereto (at any rate the beneficial title) might be found never to have passed to the transferee, who thereafter received the dividends as her own and paid the federal income tax thereon.

I am, unhappily, familiar with fraud and its manifold indicia. I can find no scintilla of evidence of fraud in this case. It takes evidence to establish fraud; it is not a pure creation of the imagination, even of a jury. Wilson v. Eisner (C. C. A.) 282 F. 38.