## SMYTH, Collector of Internal Revenue, v. BARNESON.

### No. 12320.

United States Court of Appeals
Ninth Circuit.

April 5, 1950.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Francis W. Sams and Irving I. Axelrad, Sp. Assts. to the Atty. Gen., Frank J. Hennessy, U. S. Atty., C. Elmer Collett, Asst. U. S. Atty., San Francisco Cal., for appellant.

Joseph D. Brady, Walter L. Nossaman, James L. Wood, Los Angeles Cal., for appellee.

Before: STEPHENS, HEALY and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

The Collector of Internal Revenue is appealing from a judgment of the district court decreeing a refund to a taxpayer. The controversy arises out of the disallowance by the Commissioner of Internal Revenue of a $150,000 bad debt deduction taken by appellee on her 1941 individual federal income tax return.

The case comes to us upon stipulation of facts supplemented by the testimony of one witness for appellee and one, an Internal Revenue agent, for the Collector. The refund was decreed upon the finding that the questioned debt existed on January 1, 1941, and was then of value and that it became worthless during the ensuing year. Internal Revenue Code § 23(k) (1).[1]

The Collector thinks the alleged debt never existed but that if it ever existed the sum of the loss cannot be taken as a bad debt deduction because the taxpayer failed to take reasonable steps to collect it.

In order to rule with appellant Collector as to the non-existence of the debt, we must determine that the court's contrary finding was clearly erroneous. In determining this point we consider all of the evidence giving the written evidence the weight we deem it entitled to de novo and applying the oral evidence with "due regard * * * to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.[2].

The facts, in brief, are: In 1928 and 1929 the taxpayer advanced to her father $150,000. He used the money, and a like amount secured from his wife, taxpayer's mother, together with some of his own personal funds, to invest in a brokerage firm. The amounts so advanced were entered in the father's books in individual loan accounts. Yearly returns from such investment were received by the father up until 1932, and divided by him with his wife and daughter in the ratio of their advancements to him. On taxpayers' tax returns for the years thus involved, such monies as she received from her father were reported as income from partnership except for one year in which it was reported as interest. In 1932 the firm failed, and the father took on his tax return for that year a loss for the total amount invested although he derived no tax benefit therefrom. Taxpayer had income tax liability for that year which would have been eliminated if she had taken as a loss the amount advanced to her father. Thereafter, the father paid nothing to taxpayer. Taxpayer was adjudged incompetent in 1936 and a brother was appointed her guardian. Shortly thereafter in 1936 the mother died and the brother was appointed executor of the mother's estate. In the same year the father voluntarily informed the executor that he owed his deceased wife $150,000 and that he owed a like amount to taxpayer, and that he intended to pay both debts. The $150,000 thus stated by the father to be owing to his deceased wife he paid to her estate in 1937, and the loan account as to her on his books was closed out. The father died in 1941, and a claim for the $150,000 filed against his estate by taxpayer's guardian was rejected in 1941 as being barred by the statute

1. It is not contended that the deduction in question is subject to the limitations of I.R.C. § 23(k) (4), 26 U.S.C.A. § 23 (k) (4).

2. Equitable Life Assurance Society v. Irelan, 9 Cir., 1941, 123 F.2d 462, 464; Smith v. Royal Ins. Co., 9 Cir., 1942, 125 F.2d 222, 224; Home Indemnity Co. of New York v. Standard Acc. Ins. Co. of Detroit, 9 Cir., 1948, 167 F.2d 919, 923; Grace Bros. v. Comm'r of Internal Revenue, 9 Cir., 1949, 173 F.2d 170.

See rule (in agreement with the text) we have announced in several admiralty cases which we think applies as well in civil cases: The Ernest H. Meyer, 1936, 9 Cir., 84 F.2d 496; certiorari denied sub nom. Hammond Lumber Co. v. Broughton & Wiggins Navigation Co., 1936, 299 U.S. 600, 57 S.Ct. 193, 81 L.Ed. 442; The Pennsylvanian, 1943, 9 Cir., 139 F.2d 478; Matson Navigation Co. v. Pope & Talbot, Inc., 9 Cir., 1945, 149 F.2d 295, certiorari denied sub nom. Pope & Talbot, Inc. v. Matson Navigation Co., 1945, 326 U.S. 737, 66 S.Ct. 46, 90 L.Ed. 439; United States v. Lubinski, 9 Cir., 1946, 153 F.2d 1013.

And see an equity case, Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348, 352.

of limitations.[3] The father, at all material times, was financially able to pay such amount to the taxpayer. The alleged debt was never listed as an asset on any of the inventories filed with any court by taxpayer's guardian. No note or other evidence ever indicated an obligation on the part of taxpayer's father to repay to her the $150,-000.

All the above facts were stipulated to except for the testimony of taxpayer's brother, her guardian, as to the conversation had with the father in 1936 in which the latter stated that he owed taxpayer $150,-000.[4]

■ If the trial court assumed, which it evidently did, that taxpayer's guardian spoke the truth, the father's declaration against interest as to his indebtedness to his daughter was amply sufficient to sustain the finding that the debt was existent at the time   Upon the whole record, we hold that the trial court's finding was not clearly erroneous.   Compare Orvis v. Higgins, 2 Cir., 180 F.2d 537.

As a basis for argument only and after making it plain that he believes the alleged debt never existed, the Collector assumes that the debt did exist and that it became worthless in 1941. He then contends that the "taxpayer is nevertheless not entitled to a bad debt deduction * * * unless she has made a reasonable effort to collect the debt." This she did not do.

Section 23(k) (1) of the Internal Revenue Code authorizes a deduction for "Debts which become worthless within the taxable years * * *."[5] The statute requires, as the basis for a deduction, that a debt actually existed and that it became worthless within the taxable year in which the deduction is claimed. Appellant would have us add a third requisite, i. e., that a reasonable effort must have been made to collect the debt.

■■ It is true that the evidence as to efforts to collect is relevant as to the time a debt actually becomes worthless but, by and of itself, effort to collect is not an element of worthlessness. Authorities cited by the Collector do not hold contrariwise. In the instant case the death of taxpayer's father and the rejection of her claim against his estate in 1941 established its noncollectibility and therefore worthlessness. This fact alone is not conclusive of when it became noncollectible or worthless. But the trial court after consideration of all the evidence was of the opinion that the debt existed and that it might well have been paid at any time before the father's death. Notwithstanding the fact that the statute of limitations could have been pleaded as a complete bar prior to 1941, the debt was existent and at any time might have been paid voluntarily by the debtor [he paid $150,000 into his wife's estate] and could have been collected through court action up to the moment of the debtor's death, except for a special plea setting up the statute of limitations in bar. After the debtor's death, the law, California Probate Code, § 708, prevented the payment of any debt as to which the statute of limitations had run.

We discern no mistake in the findings of fact, conclusions of law, and judgment. Compare United States v. United States Gypsum, 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

Affirmed.

---

3. We do not decide whether or not taxpayer's disability prior to incompetency adjudication in any way affected the bar of, or tolled, the California statute of limitations because the Collector here does not dispute but that the debt, if it ever existed, became worthless in 1941.

4. The testimony of the Internal Revenue agent went only to a description of an open account to taxpayer kept by the father on his books (separate from the loan account mentioned in the text).

5. Internal Revenue Code § 23(k) (1) as in effect in 1941 authorized a deduction for "Debt *ascertained* to be worthless and charged off within the taxable year * * *." By the Revenue Act of 1942, § 124(a) and (d), 56 Stat. 820, 822, such section was amended to read "Debts which *become* worthless within the taxable year * * * and as amended was made applicable retroactively to taxable years beginning after December 31, 1938.