**MUTCH**
v.
**COMMISSIONER OF INTERNAL REVENUE.**
No. 11184.

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 1953.

Decided Jan. 13, 1954.

Frederick E. S. Morrison, Philadelphia, Pa. (Calvin H. Rankin, James J. Cloran, Drinker, Biddle & Reath, Philadelphia, Pa., on the brief), for petitioner.

Robert B. Ross, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Sp. Assts. to the Atty. Gen., on the brief), for respondent).

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The Tax Court found a deficiency of $73.26 in petitioner's income tax for 1947 and disallowed his claim of overpayment in the sum of $469.90. The dispute is over the latter item.

Petitioner is a clergyman who for twenty-four years served as minister of the Bryn Mawr, Pennsylvania Presbyterian Church, resigning in 1936 because of illness. He left behind him tangible evidence of fine accomplishment. The membership of the church during his pastorate increased from 250 to 1100. A new church and school were erected at a cost of $710,000. The debt on these was less than $130,000 at the time of his retirement.

The original salary of Dr. Mutch was $6,000 a year. This was increased to $7,200 on October 1, 1918; to $7,500 on April 1, 1921; to $9,000 on December 1, 1921 and to $10,000 on April 1, 1929. In 1933 because of the general business depression petitioner urged that his salary be reduced to $8,500 a year. His suggestion was accepted and he received that reduced salary until his resignation in 1936. From 1927 to and including 1935 the church contributed to the Board of Pensions of the Presbyterian Church 7½% of taxpayer's salary and taxpayer contributed 2½%. Payment of a pension of $1,206 a year to Dr. Mutch was started in 1935 when he reached the age of sixty-five years and he has been receiving this ever since that time. During his pastorate petitioner and his wife received on their twenty-fifth wedding anniversary a gift of table silverware and the sum of $1,000. On another occasion he received a gift of $1,000 to aid him in paying certain outstanding hospital and medical expenses. When he retired individual members of his congregation contributed $8,000 as a gift to be used toward the purchase of a home for himself and his wife.

In the spring of 1936 just prior to Dr. Mutch retiring the members of the Session of the Bryn Mawr Church discussed his financial situation with him. He had his pension and an income from other sources of about $3,000 a year and he considered that ample for the maintenance of his wife and himself. However the Session elders did not think that he would have sufficient income—"as we would like our old minister to live" was the way they explained it. The Session was and is the spiritual ruling body of the church and "they combine with the trustees who look after the material side of things." One of the elders, describing the close relationship between the Session and Board of Trustees, testified that "the Session rules the church and if they make the request to the Board, the Board usually adheres to it." The Session, feeling as it did about Dr. Mutch, recommended to the Board of Trustees that he be given an "honorarium" upon retirement. The evidence is not only uncon-

tradicted but completely convincing that this was to be strictly a gift with its continuance entirely contingent upon the prosperity of the church. An elder testified in effect that in the event of financial difficulty the gift to Dr. Mutch should be one of the first things to be eliminated. Following the Session suggestion the Trustees passed a resolution which read:

"Resolved, that the present salary, use of the Manse and other allowances heretofore made to Dr. Mutch, be continued until September 30, 1936, and that thereafter an honorarium of one hundred and seventy dollars per month be paid to Dr. Mutch as Pastor Emeritus until further action by the Board.

"It is understood that Dr. Mutch's use of the Manse for occupancy will be extended beyond September 30th for such period as may be necessary to enable him to make arrangements for a new residence."

The Tax Court found that the petitioner neither requested nor suggested the payment of the "honorarium" provided in the resolution and that after his resignation he at no time agreed to render services to the church and was under no obligation to do so.

In the situation outlined the Tax Court thought that the petitioner had failed to sustain the burden of showing that the "honorarium" was a gift and therefore excludible from gross income under Section 22(b) (3) of the Internal Revenue Code, 26 U.S.C.A. To set that decision aside it must be clearly wrong. That is the test and petitioner's case meets that test squarely.

In denying petitioner's claim the Tax Court relied on the negative proposition that no member of the Board of Trustees testified and that "no evidence was offered as to how payments of the petitioner were carried on the books and records of the church." There was also a holding that "[o]ther than the language of the resolution itself, there is no evidence of the intent of the Trustees in passing the resolution."

As we see it the petitioner presented a full chain of proof. He showed that the Session action which brought about the later resolution of the Trustees was motivated solely and sincerely by the congregation's love and affection for Dr. Mutch. The resolution, in evidence, distinguished sharply between the running of the specified salary to a day certain and the bestowal of the monthly "honorarium", the existence of which by the terms of the resolution depended solely upon the trustees. As the respondent infers, of course the balance of salary was taxable. It was no different from the ordinary extension of a salary for a retiring employee to compensate him for accrued vacation time, sick leave, etc. It was utterly different from the free gift of a friendly, well-to-do group who as long as they were able and because they were, wished their old minister to live in a manner comparable to that which he had enjoyed while actively associated with them. Nor is it justifiable here to imply that petitioner is attempting to modify the import of the resolution. Dr. Mutch had been receiving his pension for more than a year prior to his retirement; the stop date of his salary was expressly noted in the resolution. What the church gave him in addition was neither of these nor of their nature but the bestowal upon him of a modest monthly sum to help him and his wife with their living expenses in retirement. The purpose of the Session was unmistakable. That such purpose was adopted by the Trustees is clearly indicated by their resolution. Dr. Mutch had been adequately compensated as far as money could for his services in the past. He was not being tied into any promise of services in the future. The installment gift, while it could be stopped or changed at any time by the trustees, had no conditions attached to its acceptance.

The decisions strongly support our view. Schall v. Commissioner of Internal Revenue, 5 Cir., 1949, 174 F.2d 893, 894, concerned the same sort of problem though not as strong on its facts in favor of the taxpayer as is the present issue.

There the retiring minister of a Wayne, Pennsylvania church by resolution was constituted Pastor Emeritus "with salary or honorarium amounting to Two Thousand Dollars ($2,000.) annually, payable in monthly installments, with no pastoral authority or duty * * *." The Tax Court held the payments were taxable income on the ground that the taxpayer had failed to sustain his burden to the contrary. The Fifth Circuit held that where "* * * all the facts and circumstances surrounding the adoption of the resolution clearly prove an intent to make a gift, the mere use of the terms 'salary' and 'honorarium' do not convert the gift into a payment for services. '* * * a gift is none the less a gift because inspired by gratitude for past faithful service of the recipient.'"

Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 58 S.Ct. 61, 82 L. Ed. 32, is the key decision on the question of whether a gift or payment for services is involved. The Supreme Court had before it in that litigation a "gift or honorarium" of former stockholders of a corporation to some of the corporate employees. The action in that case was also by resolution. The Court, holding that the distribution was a gratuity, reversed the Tax Court's finding that the payments were additional compensation to the employees. Kavanagh v. Hershman (U.S.D.C.E.D.Mich.) June 29, 1953 (unreported), pending on Government appeal in the Court of Appeals for the Sixth Circuit, is in accord with the principle of the Bogardus and Schall cases. Abernethy v. Commissioner, 20 T.C. 593, pending on taxpayer's appeal in the Court of Appeals for the District of Columbia, is substantially distinguishable on its facts from those in the instant petition. None of the other citations presented on behalf of respondent justifies the taxing of this bona fide gift given petitioner with love and affection by his old congregation.

The decision of the Tax Court will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.