Alden D. STANTON and Louise M.
Stanton, Appellees,

v.

UNITED STATES of America,
Appellant.

No. 329, Docket 25569.

United States Court of Appeals
Second Circuit.

Argued May 14, 1959.

Decided July 6, 1959.

Hincks, Circuit Judge, dissented.

See also 137 F.Supp. 803.

Howard Heffron, New York City
(Cornelius W. Wickersham, Jr., U. S.
Atty., Lloyd H. Baker, Asst. U. S. Atty.,
Brooklyn, N. Y., Charles K. Rice, Asst.
Atty. Gen., Lee A. Jackson, Robert N.
Anderson, James P. Turner, Attys. Dept.
of Justice, Washington, D. C., on the
brief), for appellant.

Clendon H. Lee, New York City,
O'Connor & Farber, New York City, for
appellees.

Before HAND, SWAN and HINCKS,
Circuit Judges.

HAND, Circuit Judge.

The plaintiffs sue to secure a refund
of $15,056.29 representing income taxes
(principal and interest) paid for the
year 1943, which they allege were ille-
gally collected. In 1933 or 1934 the
plaintiff, Mr. Stanton, had been retained
to manage the real property of Trinity
Church in New York. Trinity Operating
Company, Inc. was organized to take
over this work and Mr. Stanton became
its president and a member of its board
of directors. Although he was also
"Comptroller" of the church, he was
never a vestryman or warden; and all
his time was occupied in caring for its
real estate; his salary was $22,500. In

728

November, 1943, he voluntarily resigned as Comptroller, and as president and director of the Operating Company, and a few days previously the Operating Company had passed a resolution that "in appreciation of the services rendered by Mr. Stanton as Manager of the Estate and Comptroller of the Corporation of Trinity Church throughout nearly ten years, and as President of Trinity Operating Company, Inc., its subsidiary, a gratuity is hereby awarded to him of Twenty Thousand Dollars * * * provided that, with the discontinuance of his services, the Corporation of Trinity Church is released from all rights and claims to pension and retirement benefits not already accrued up to November 30, 1942." The plaintiffs—Mr. Stanton and his wife—filed joint income tax returns for the years 1942 and 1943, and in their return for 1943 admitted the receipt of the "gratuity" but did not include it in their income because it was a "gift." The Commissioner of Internal Revenue decided that it was income and assessed a deficiency for the year 1943 in the amount of $10,629.57. The plaintiffs eventually paid this with accumulated interest, $15,066.29, and filed a claim for refund upon whose denial they filed this action; and after a trial without a jury Judge Byers granted judgment in their favor.

It is clear in the decisions, perhaps especially in this circuit, that in such situations the test of "compensation" is not whether the donor is under any legal obligation to make the payment; but that it may be his "income" although the donee had no right to enforce its payment. The last of our decisions in Carragan v. Commissioner, 2 Cir., 197 F.2d 246, 248, so declares and in Nickelsburg v. Commissioner, 154 F. 2d 70, we said (at page 71) that the test was whether "what was added was by way of more compensation for a deserving employee or merely to satisfy the employer's desire to become a benefactor." That is indeed not an exact standard, but unhappily it is about as good as any that has been made. Bogardus

v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, is the only decision of the Supreme Court on the subject and it held for the taxpayer by a vote of five to four. The "bonus" or "honorarium," as the donor there called it, was given by a corporation, called "Unopco," which had the same shareholders as the Universal Oil Products Company, which had been the employer of the donee. The shareholders of "Universal" had sold all their shares to another corporation, United Gasoline Company, reserving only $4,000,000 for "Unopco," a corporation whose "only business was the investment and management of the assets thus acquired." "Unopco" made a general distribution as a "gift" or "honorarium" of $600,000 to all the former employees of "Universal," of which the plaintiff's share was $10,000. Although the shareholders of "Unopco" had been the same as those of "Universal," the donees were not continued as employees of "Unopco," but remained in the employ of "Universal." The Supreme Court seemed to set store upon the fact that "Unopco" was a separate venture, for Justice Sutherland repeated this circumstance as an important factor in the result. We have no warrant for supposing that, if "Universal" had continued its business, the results would have been the same. In the case at bar the business of the Operating Company continued after Mr. Stanton had resigned; moreover, his was a single payment made in "appreciation" of his particular services, and was not part of a free-handed distribution to all employees. Furthermore, as we have said, the resolution contained a proviso that Mr. Stanton should abandon all rights to "pension and retirement benefits." It is true that the uncontradicted testimony was that in fact he was thought to have no such rights; but nevertheless the conclusion is inescapable that the proviso was "to make assurance doubly sure," and it cannot be disregarded in deciding whether the payment was made wholly from generosity, for when that is the case such a proviso is certainly an incongruous addition.

It is impossible to reconcile the decisions, and before Bogardus v. Commissioner, supra, at times it appears to have been supposed that the test was whether the payment discharged an enforceable obligation. For example, the Third Circuit certainly assumed that this was true in Cunningham v. Commissioner, 67 F.2d 205. Moreover in these situations, although not here, there may be an implied promise, which, though not expressed, could support an action in contract; as, for example, if it had been the established practice of the donor to give an "honorarium" to all employees who voluntarily resigned. Probably, we should suppose that, whenever an employee has discharged his duties with outstanding fidelity and capacity, any "honorarium" results from mixed motives: (1) the employer feels that the employee has given more than the bare measure of service required, and that the employer has therefore received more than he could legally have exacted; and (2) that the employer feels friendship, perhaps even affection, for the employee. We are disposed to believe that this accounts for the apparent uniformity with which courts have treated as gifts "honoraria" to clergymen. In such cases the parishioners are apt to be largely moved by gratitude for spiritual direction, kindness and affection and do not think in quantitative terms of whatever financial gains the pastor may have contributed to the corporation. Schall v. Commissioner, 5 Cir., 174 F.2d 893; Mutch v. Commissioner, 3 Cir., 209 F.2d 390; Abernethy v. Commissioner, 94 U.S.App. D.C. 41, 211 F.2d 651. We cannot say positively that in the case at bar this second factor may not have had any place in the action of the board of directors of the Operating Company; but, since Mr. Stanton's duties were exclusively financial and there is no evidence that personal affection did enter into the payment, we should not assume that it did. Indeed, the resolution was "in appreciation of the services rendered" by him in the conduct of the business, and it is safe to assume that the "honorarium"

for practical purposes was the result of the satisfaction of the Operating Corporation for the success of his real estate ventures. The Supreme Court has several times said that a taxpayer has the burden of proving that the Commissioner's determination is wrong. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; his decision is prima facie correct; Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184. Certainly the taxpayers in the case at bar did not prove that to any substantial degree the "honorarium" was more than an expression of gratitude for exceptional services rendered.

We are indeed acutely aware that such a test goes far to leave the issue always in the hands of the taxing authorities, but it is, as we have tried to show, inherently incapable of exact definition, and we can think of no better standard.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

HINCKS, Circuit Judge (dissenting).

In Helvering v. American Dental Co., 318 U.S. 322, 327, 63 S.Ct. 577, 580, 87 L.Ed. 785, it was said: "The narrow line between taxable bonuses and tax free gifts is illuminated by Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, on the one side and upon the other by Noel v. Parrott, 4 Cir., 15 F.2d 669, as approved in Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918." In my analysis the case here is far closer to Bogardus than to Noel.

In Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, it is true that the majority opinion points to the fact that the recipients of the bounty were never the employees of the disbursing company or its stockholders. But as I read the majority opinion this was at most a makeweight, not at all a decisive consideration. It was said, on page 41 of 302 U.S., on page 65 of 58

**730**

S.Ct. that if the disbursements had been made by the employer, "or by stockholders of that company still interested in its success and in the maintenance of the good will and loyalty of its employees, there *might be ground for the inference* that they were payments of additional compensation." (Emphasis supplied.) This is a far cry from a holding that the result would *necessarily* have been otherwise if the employer-employee relationship had existed at the very moment of the disbursement. And obviously the added weight of this feature was minuscule: the payment came from the stockholders who had enjoyed the economic benefit resulting from the employment— from those who a day or two before had been the stockholders of the employer-corporation. Indeed, as Judge Hand observed in his opinion below, Bogardus v. Helvering, 2 Cir., 88 F.2d 646, at page 648–649, the "intent and motive were precisely the same as though the shareholders had been the employers of the donees, which they were not." The other grounds of distinction advanced by my brothers are even more tenuous. Indeed, in my estimate they tend to support the conclusion of a gift, rather than to militate against it.

In the Noel case, referred to in Helvering v. American Dental Co., supra, as illuminating the dividing line from the other side, there were factors, not present here, which cogently supported the conclusion of compensation. For in Noel, as Judge Parker points out, "it affirmatively appears that it [i e., the questioned payment] was made upon a consideration." [15 F.2d 671.] Moreover, in Noel it was reported by the corporate "donor" in its income tax return as a salary deduction.

And so, if the distinction between gift and compensation is a problem to be determined on an *ad hoc* basis—as is implicit in the Bogardus majority opinion

—the instant case, in my judgment, should be classified as a gift: it is within the scope of the Bogardus decision.

However, in the Bogardus case Justice Brandeis in his dissenting opinion, made a somewhat different approach to the problem. He said [302 U.S. 34, 58 S.Ct. 66]:

"* * * What controls is the intention with which payment, however voluntary, has been made. Has it been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears a tax. Has it been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt.

"We think there was a question of fact whether payment to this petitioner was made with one intention or the other. A finding either in his favor or against him would have had a fair basis in the evidence. It was for the triers of the facts to seek among competing aims or motives the ones that dominated conduct. Perhaps, if such a function had been ours, we would have drawn the inference favoring a gift. That is not enough. If there was opportunity for opposing inferences, the judgment of the Board controls. Elmhurst Cemetery Co. of Joliet v. Commissioner, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755."

In the case now before us a search "among competing aims or motives [for] the ones that dominated conduct" will reveal evidence of the following facts. The employment relationship had been one that had brought Stanton into close personal contact [1] with the vestry and

1. Obviously, payments to an individual employee whose work has brought him into close personal touch with his employer may more readily be found to emanate from motives of "good will, esteem, or kindliness" than payments to groups of employees who had had no personal contact with the employer. It is this personal feature of the relationship which goes far to explain the cases re-

wardens of the church and with the directors of the Operating Company several of whom testified that a general feeling of gratitude, rather than a desire to supplement Stanton's salary, had prompted the payment. Stanton's salary in the past had been in no way inadequate;[2] and the amount given was in no way geared to salary or years served. A vestryman and director of the Operating Company testified: "Mr. Stanton was liked by all the vestry personally. He had a pleasing personality." And the senior warden testified: "We understood that he was going into business for himself. We felt that he was entitled to that evidence of good will." The employment relationship was at an end when the payment was made and the donor derived no benefit therefrom aside from the satisfaction flowing from its expression of gratitude.

If these facts be added to those recited in my brothers' opinion the sum total, it seems to me, would adequately support a finding that "good will, esteem or kindliness," the touchstone of Justice Brandeis' dissenting opinion in Bogardus, rather than more complete requital for past services, had dominated the Operating Company in making the payment. And such a finding is implicit in the more general finding below. In Bogardus, the majority of the court thought the determination of the trier had "no support in the primary and evidentiary facts." That is *not* so here, as the evidence just referred to shows. The Bogardus minority found that "there was opportunity for opposing inferences," exactly the situation here. That being so, I think we may not disturb the finding of the dominating motive on which the judgment below was based.

Peters v. Smith, 3 Cir., 221 F.2d 721; Nickelsburg v. Commissioner, 2 Cir., 154 F.2d 70.

Surely the finding below was not clearly erroneous within the purview of Federal Rules of Civil Procedure, Rule 52, 28 U.S.C.A. Findings by a trial judge, just as those by the Tax Court,[3] may not be disturbed unless clearly erroneous. Plaut v. Munford, 2 Cir., 188 F.2d 543; Smith v. Hoey, 2 Cir., 153 F.2d 846; Scott v. Self, 8 Cir., 208 F.2d 125; Smyth v. Barneson, 9 Cir., 181 F.2d 143. In other areas of tax law, questions going to intent have generally been dealt with as questions of fact. See United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Blakeslee v. Smith, 2 Cir., 110 F.2d 364; White v. Bingham, 1 Cir., 25 F.2d 837; Jahn v. Pedrick, 2 Cir., 229 F.2d 71; Keefe v. Cote, 1 Cir., 213 F.2d 651. See also case note on Bogardus v. Helvering, 2 Cir., 88 F.2d 646; 51 Harv.L. Rev. 167. In Peters v. Smith, supra, it was held that a jury finding that a payment was a gift, when made on conflicting evidence, may not be set aside.

Thus I am brought to the conclusion that the holding of my brothers is in conflict with both of the Bogardus opinions and exceeds the power of an appellate court over findings by the trier of facts. Nor is the result reached required by the earlier cases in this circuit. Both Carragan v. Commissioner, 2 Cir., 197 F.2d 246, and Nickelsburg v. Commissioner, supra, are distinguishable on their facts. Moreover, in both, this court refused to disturb the finding of the trier.

I would affirm.

ferred to by my brothers which held that payments to ministers constituted gifts.

2. It was almost twice that later provided for his successor.

3. 26 U.S.C.A. § 7482(a) provides
"(a) *Jurisdiction.*—The United States Courts of Appeals shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; * * *."