Hugh A. and Verna B. Brimm v. Commissioner.
Brimm v. Commissioner
Docket No. 1013-67.
United States Tax Court
T.C. Memo 1968-231; 1968 Tax Ct. Memo LEXIS 69; 27 T.C.M. (CCH) 1148; T.C.M. (RIA) 68231; October 7, 1968. Filed Hugh A. Brimm, pro se, 1095 N. Jamestown Rd., Decatur, Ga. Dean R. Morley, III, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined income tax deficiencies against the petitioners for the years 1962 and 1963 in the respective amounts of $1,101.30 and $1,441.27. Petitioners have not assigned error in their petition with respect to an adjustment made by respondent to a net longterm capital gain for the year 1963. There are also adjustments in medical expense *70 deductions for 1962 and 1963. These adjustments can be given effect in the Rule 50 computation. The only issue for decision is whether amounts received by petitioner Hugh A. Brimm in 1962 and 1963 from the Carver School of Missions and Social Work were gifts or taxable income. Findings of Fact Some of the facts have been stipulated by the parties and are found accordingly. Hugh A. Brimm (herein called petitioner) and his wife, Verna B. Brimm, were legal residents of Decatur, Georgia, at the time they filed their petition in this proceeding. Their joint Federal income tax returns for the years 1962 and 1963 were filed with the district directors of internal revenue at Louisville, Kentucky, and Atlanta, Georgia, respectively. The petitioner was employed as Professor of Anthropology and Human Relations at the Carver School of Missions and Social Work (herein referred to as the Carver School), Louisville, Kentucky, from 1952 to January, 1963. The Carver School was a church related, two-year graduate school supported by the Southern Baptist Convention. It had a faculty and staff of about 12 and a student body of about 175. The chairman of its board of trustees requested the *71 Convention annually to provide funds for its operation. The Carver School did not get a specific allotment of funds for gifts other than scholarships and did not have a special fund for gifts in its budget. Some three or four years prior to its closing it became apparent that, because of the small student body and the high cost of operations, the Carver School would have to be closed as a separate institution. This possibility was discussed at the Convention and in the halls of the school. Although the teachers were not working under contracts, most members of the faculty chose to remain. It was necessary to maintain the faculty and staff until the time of dissolution in June, 1963, since it was decided that students 1149 who had reached a certain point in their studies should be permitted to complete the courses required for a degree. In contemplation of dissolution, the board of trustees of the Carver School adopted a resolution at a meeting held on April 23, 1962, which provided, in pertinent part, as follows: A proposed severance policy was presented to Mr. Sandidge as requested at the last meeting. Motion was made by Mr. Williams, seconded by Mrs. Durham and carried *72 that the following recommendation be adopted: We recommend that the School make a gift equivalent to one year's salary to each faculty member and staff member upon termination of his or her services with the school. * * * Shortly thereafter the faculty and staff learned of the official action taken by the trustees in adopting the "severance policy." An amount equal to one year's salary was paid to each faculty and staff member regardless of his length of service with the Carver School or the nature of the services rendered. All members of the faculty and staff had been adequately compensated for their services. The action of the board of trustees, pursuant to the "severance policy," was not intended to additionally compensate the faculty and staff for past services. There was no intent to require any future services from the recipients in return for the amounts given when their employment with the Carver School ended. The payments were not made in the discharge of a contractual obligation or according to the individual financial needs of the recipients. The payments were made to all members of the faculty and staff regardless of how long they had been with the Carver School *73 or when they left between May, 1962, and June, 1963. The Carver School was merged into the Southern Baptist Seminary in June, 1963, and no members of the faculty were retained. The amount of $8,600, specified in the "severance policy," was paid to petitioner in two installments. The first payment was made in December, 1962, by check No. 4718, with the notation "First Half Severance Gift." The second payment was made in January, 1963, by check No. 4788, with the notation "2nd Half Severance Gift." No taxes were withheld by Carver School from the "severance gift" made to him. However, petitioner's regular salary was subject to income tax withholding. Petitioner left the Carver School and began work on a new job on January 23, 1963, in Birmingham, Alabama, for the United States Army Materiel Command. There was no tax benefit to the Carver School, a tax-exempt organization, in making the payments to petitioner. In his Federal income tax returns for the years 1962 and 1963 the amounts received by petitioner pursuant to the "severance policy" of the Carver School were not reported because he regarded them as gifts. In his notice of deficiency respondent determined that the additional *74 amount of $4,300 paid to petitioner by the Carver School in each of the years 1962 and 1963 was taxable income and not a gift. Ultimate Findings 1. The board of trustees of the Carver School intended to make a gift of the amounts paid to petitioner in 1962 and 1963 in appreciation and recognition of his past services and achievements. 2. The amounts received by petitioner were non-taxable gifts. Opinion Whether the payments made to petitioner are gifts excludable from gross income under section 102(a), Internal Revenue Code of 1954, [1] or taxable income under section 61(a), is basically a factual question to be determined by the trier of the facts. Commissioner v. Duberstein, 363 U.S. 278 (1960); Smith v. Commissioner, 305 F. 2d 778 (C.A. 3, 1962), affirming a Memorandum Opinion of this Court. The applicable principles were expressed by the Supreme Court in the Duberstein case (363 U.S. at pp. 285-286) in the following manner: The course of decision here makes it plain that the statute does not use the term "gift" *75 in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by 1150 one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730. And, importanty, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41, it is not a gift. And, conversely, "[where] the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." Robertson v. United States, 343 U.S. 711, 714. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246; "out of affection, respect, admiration, charity or like impulses. *76 " Robertson v. United States, supra, at 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 43. "What controls is the intention with which payment, however voluntary, has been made." Id., at 45 (dissenting opinion). The Government says that this "intention" of the transferor cannot mean what the cases on the common-law concept of gift call "donative intent." With that we are in agreement, for our decisions fully support this. Moreover, the Bogardus case itself makes it plain that the donor's characterization of his action is not determinative - that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S., at 40. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter. It is suggested that the Bogardus criterion would be more apt if rephrased in terms of "motive" *77 rather than "intention." We must confess to some skepticism as to whether such a verbal mutation would be of any practical consequence. We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact - the dominant reason that explains his action in making the transfer. Further than that we do not think it profitable to go. [Footnotes omitted.] It is clear from the evidence that the board of trustees of the Carver School took their action in declaring and making a "severance gift" to the petitioner, as well as to other members of the small staff, because they were grateful and appreciative of the past faithful and dedicated service rendered to the school. The presence of affection, respect, admiration, and a deep sense of appreciation in the minds of trustees is demonstrated by the candid testimony of Reverend B.L. Williams, Jr., who served on the trustees' executive committee from 1957 to 1963, who was chairman *78 of the board for two years, and who made the motion "that the School make a gift equivalent to one year's salary to our faculty and staff." Reverend Williams testified, in part, as follows: Q Mr. Williams, was this action, which originated with your motion, an effort to pay an additional amount of compensation for past services to the faculty and staff? A No; it was not. Q From your standpoint, having made the motion, was it your intent to require any future service from the faculty and staff in return for the gift of a year's salary? A No; none whatsoever. * * * THE COURT: And was this done in appreciation for services that these men had rendered? THE WITNESS: Yes. Appreciation for our faculty and staff. What they had meant to our students, and to our Convention. A gift of appreciation. No strings attached whatsoever. * * * Q Mr. Williams, may I ask one further question, following the question raised by his Honor: Was this action taken because it was felt that the faculty had not been sufficiently compensated in the past. A No, it wasn't, because we had done a study, when I first came on the Board of Trustees. We hired consulting company; Booz, Allen, Hamilton; to *79 study our faculty; our salary schedule; and make recommendations to us. We were seeking accreditation in the Southern Association. We knew - They had standards that we had to come up to. And we felt our salaries were adequate for our staff and faculty for the work they did. 1151 There is no doubt that the Carver School's Trustees were motivated by gratitude for the petitioner's past faithful services, but, as the Supreme Court said in Bogardus v. Commissioner, 302 U.S. 34, 44 (1937), "[a] gift is none the less a gift because inspired by gratitude for past faithful service of the recipient." Indeed, long and faithful service may create the atmosphere of goodwill and kindliness toward the recipient which tends to support a finding that a gift rather than additional compensation was intended. Cf. Schall v. Commissioner, 174 F. 2d 893 (C.A. 5, 1949); Mutch v. Commissioner, 209 F. 2d 390 (C.A. 3, 1954); Abernethy v. Commissioner, 211 F. 2d 651 (C.A.D.C., 1954), all involving payments made to retired ministers. The Commissioner announced *80 acceptance of these results in Rev. Rul. 55-422, 1955-1 C.B. 14. Some retiring or separated employees other than ministers have succeeded in their contention that the payment was a gift. See Estate of Grace G. McAdow, 12 T.C. 311 (1949); Bank of New York v. Helvering, 132 F. 2d 773 (C.A. 2, 1943); Neville v. Brodrick, 235 F. 2d 263 (C.A. 10, 1956); and Cunningham v. Commissioner, 67 F. 2d 205 (C.A. 3, 1933). See also Rev. Rul. 55-330, 1955-1 C.B. 236, indicating that an allowance equal to six-month's salary paid by the Government because of the death of an officer or enlisted member of the Armed Forces is a gift from the Government to the statutory beneficiaries. Clearly distinguishable are cases like Poorman v. Commissioner, 131 F. 2d 946 (C.A. 9, 1942), and Willkie v. Commissioner, 127 F. 2d 953 (C.A. 6, 1942), cited by respondent, which involved employer-employee relationships and dealt with the tax consequences flowing from the disposition of funds of a corporation conducted for the financial profit of its stockholders where the corporation got the tax benefit of *81 a deduction for the payments made. Stanton v. United States, 186 F. Supp. 393 (D.C. E.D., N.Y., 1960), affirmed per curiam 287 F. 2d 876 (C.A. 2, 1961). An undercurrent in such cases is a recognition that a business corporation ordinarily cannot make a "gift" of its assets without shareholder approval. The Carver School, a non-profit, tax-exempt organization was under no such restraint and was at liberty to characterize the payment as it chose. Its characterization of the payment as a "gift," even if motivated by a desire to create a tax benefit for petitioner (which is by no means established in this record), was consistent with and evidenced a feeling of affection and detached generosity toward petitioner. We cannot find that the payments made by the Carver School proceeded from the impulse of a moral or legal duty or from the incentive of anticipated economic benefit. Petitioner was adequately compensated for his work. The school was in the process of closing its doors. Unlike the situation in Tomlinson v. Hine, 329 F. 2d 462 (C.A. 5, 1964), the Carver School did not have a plan or past practice of making severance payments as employees *82 terminated their employment. The so-called "severance policy" was adopted in April 1962 because the school was to be dissolved and the trustees wanted to show their deep appreciation to the faculty and staff for their past faithful services. On the basis of the documentary evidence and testimony contained in this record, we hold that the Carver School intended to make, and did make, a gift to petitioner which was made gratuitously and in exchange for nothing. Cf. Stanton v. United States, supra; United States v. Robertson, 343 U.S. 711 (1952). This finding makes it clear that petitioner did not receive "severance pay," as that term is used in section 1.61-2(a)(1), Income Tax Regs. Therefore, the total amount received by him is not taxable. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩