## WHITE & WELLS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 414.

Circuit Court of Appeals, Second Circuit.

Argued May 8, 1931.

Decided June 1, 1931.

Henry F. Parmelee, of New Haven, Conn. (Barry Mohun, of Washington, D. C., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen. (Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., C. M. Charest, General Counsel, Bureau of Internal Revenue, of Washington, D. C., and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The sole point in dispute is the amount of profit realized by the petitioner in 1920 upon the sale of its Naugatuck paper box factory as a going concern; and this in turn depends upon the going concern value on March 1,

1913. The Board of Tax Appeals fixed such value at $31,441.60. The petitioner contends that so low a valuation cannot be sustained by the record, and asks us to find the value to be not less than $73,689.75.

The box factory was located and equipped with special reference to convenience and efficiency in supplying the needs of two manufacturers of rubber goods, whose entire requirements had for many years been purchased from petitioner and constituted practically all the box factory's business. The business with the rubber companies was done under a series of five-year contracts fixing prices, and the record discloses that it had been profitable over a long period of years. The net earnings of the factory for each of the five calendar years immediately preceding March 1, 1913, were found to be as follows: 1908, $38,549.98; 1909, $28,104.60; 1910, $16,555.63; 1911, $806.99; 1912, $18,691.67. This shows average yearly net earnings of slightly more than $20,500, while the average yearly value of net tangible assets employed during this five-year period was found to be only $58,000. The prices in effect on March 1, 1913, were fixed under five-year contracts made in 1910; those for the years 1908 and 1909 were fixed under earlier contracts. The rubber companies were subsidiaries of the United States Rubber Company, and in 1920 the latter company decided that it would be advantageous and profitable to take over the box factory as a going concern, and thereafter make its own paper boxes. It paid petitioner $150,000 for the purchase. The residual value of the tangibles acquired by the purchaser was fixed by the Commissioner at $67,904.86, and this figure is not disputed. This left $82,095.14 of the purchase price ascribable to intangibles. The testimony of Mr. Rodenbach, who negotiated the purchase for the purchaser, is to the effect that he regarded the going concern value as worth at least $75,000 in addition to all tangibles.

The Board of Tax Appeals was of opinion that the going concern value on March 1, 1913, should be predicated upon operating results covering the years 1910, 1911, and 1912; and, by applying to these years the formula for the computation of good will value set forth in Appeal and Review Memorandum 34 (2 C. B. 31), the Board obtained the figure it adopted, $31,441.60. Had the formula been applied to the five-year period, it would have produced the value claimed by the petitioner; namely, $73,689.75.

The application of the said formula is not the exclusive way to value good will; but its use in appropriate cases has been sanctioned not only by the Board of Tax Appeals but also by this court. Pfleghar Hardware Specialty Co. v. Blair (C. C. A.) 30 F.(2d) 614. If it is to be used, however, it should be so applied as to be a fair measure of valuing good will; that is, the past earnings to which the formula is applied should be such as fairly reflect the probable future earnings. As stated by the general counsel of the Bureau of Internal Revenue, ordinarily the period taken should not be less than five years, and abnormal years, whether above or below the average, should be eliminated. S. R. 5545, IV-2 C. B. 242. See, also, Independent Ætna Sprinkler Co. v. Commissioner, 15 B. T. A. 521, 534; Mead Cycle Co. v. Commissioner, 10 B. T. A. 887, 895; D. M. & E. Walter & Co. v. Commissioner, 10 B. T. A. 620, 629; Appeal of C. F. Hovey Co., 4 B. T. A. 175. Pertinent also are state tax decisions recognizing that abnormal years should either be disregarded, or a long enough period taken so that unusually bad years may be offset by unusually good ones in order to get a fair average. In re Dupignac's Estate, 123 Misc. Rep. 21, 204 N. Y. S. 273, 281; In re Ball's Estate, 161 App. Div. 79, 146 N. Y. S. 499, 503; In re Bolton's Estate, 121 Misc. Rep. 51, 200 N. Y. S. 325, 327; In re Lincoln's Estate, 114 Misc. Rep. 45, 185 N. Y. S. 574, 576. This the Board did not do in the case at bar. It included the year 1911, which was evidently abnormally poor, since it was under the same price-fixing contracts as the profitable years 1910 and 1912, but it refused to include either of the exceptionally good years of 1908 and 1909. The reason given for their exclusion, namely, that they fell under contracts antedating those in effect on March 1, 1913, we cannot regard as valid. The issue before the Board was not the value of the particular five-year contracts under which the taxpayer was operating on March 1, 1913, but the value of the good will at that date. Even if the contracts had been so unfavorable to the taxpayer as to result in operation at a loss for the contractual period, it would not necessarily follow therefrom that the taxpayer had no good will in 1913. Other factors relevant to the probable future earnings of the factory for an indefinite future time would have to be considered. The experience of the company in the past, though under contracts other than those in force at the time, would normally be an appropriate consideration. The formula which

the Board applied can result in a fair estimate of good will only when the past earnings which are considered are fairly indicative of the probable future earnings. Hence we think it was erroneous to apply the formula to a period of only three years, one of which was exceptionally poor.

The petitioner asks us to direct the Board to apply the formula to the five-year period, which would result in fixing the value of good will at the figure $73,689.75. We do not think we are at liberty so to do. The period to be used is, within limits of fairness of application, to be determined by the Board. It may select a longer period than five years or a shorter period, if the years selected fairly reflect average past earnings.

Without the use of the formula, the record is not sufficient either to sustain the valuation adopted by the Board or the valuation claimed by petitioner. The value in 1913 was not proven to be as great as in 1920. Mr. Rodenbach said that the situation at the time of purchase "was practically like that in 1913"; but he also said that "the value had increased much in 1920 over 1913 on account of the war." This leaves his opinion of 1913 value too indefinite to avail either litigant.

Accordingly the order is reversed, and the cause remanded for further proceedings in conformity with this opinion.