## PLAUT v. MUNFORD.
### No. 134, Docket 21695.

United States Court of Appeals
Second Circuit.

Argued March 7, 1951.

Decided April 23, 1951.

Raymond E. Hackett and William H. Timbers, Stamford, Conn. (Cummings & Lockwood, Stamford, Conn., of counsel), for plaintiff-appellant.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and William B. Waldo, Sp. Assts. to Atty. Gen., Adrian W. Maher, U. S. Atty. and Edward J. Lonergan, Asst. U. S. Atty., Hartford, Conn., for defendant-appellee.

Before L. HAND, Chief Judge and AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In 1938 the plaintiff sold 15,700 shares of common stock of Lehn & Fink Products Corp. for $138,836.50. These shares represented, after stock split-ups and dividends, 600 shares of Lehn & Fink that he had inherited by specific bequest under the will of his father who had died on June 17, 1915. In his income tax return for 1938, when computing his capital gain on the sale of the 15,700 shares, the plaintiff reported $247.75 as the fair market value in 1915 of each of the 600 shares which he had inherited. This was the value fixed by the Surrogate of New York County in determining the New York transfer tax as of the date of the father's death. In 1941, the plaintiff filed a claim for a refund alleging that the fair value of the Lehn & Fink stock in 1915 had been $5,142.85 per share, thereby eliminating the gain realized on the sale and any tax therefor. The claim was disallowed by the Commissioner and this action followed in the District Court. After trial and argument, Hincks, J., adopted the Surrogate's valuation formula and upon correcting certain errors in his computations which are not challenged here, found the shares in question to be worth $610.36 apiece and gave judgment for $3,386.95, the amount of the resulting overpayment of tax, plus interest. The plaintiff appeals, asserting that the proper value was at least $3,150 per share.

Lehn & Fink was a closely held family corporation engaged in the distribution of proprietary drugs and chemical products largely of German origin. In the years before 1915 its earnings had been fairly stable, but about doubled in 1915 when the death of its founder and the British blockade of its German sources of supply made its future obscure and the proper valuation of its stock a matter of unusual difficulty. The Surrogate and plaintiff's and defendant's experts all used substantially the same method of valuing the stock which involved a determination of earnings derived from good-will through deducting earnings attributable to tangible assets from total earnings, capitalizing the balance, and adding to the value of the tangible assets, the value of the good-will thus estimated in order to determine the value of the company as a whole. The great differences in asserted value of the stock resulted from the use of differing figures for tangible assets, of differing capitalization rates, and

of different base earnings periods. The Surrogate took as his base average earnings for the 5 year period ending in 1915 discounting 1915 earnings to the level of 1914, and capitalized good-will at five times the earnings attributable thereto. He also wrote down certain accounts receivable to 75% of face, thereby decreasing the tangible assets. The plaintiff asserted that the single year 1915 was the proper base, that good-will should be capitalized at eight times earnings, that the accounts receivable were fully collectible, and that the District Court, in accepting the Surrogate's formula, reached a clearly erroneous result.

■ The finding as to the value of the accounts receivable was one of fact supported by evidence and will not be disturbed here. By Treasury Regulation 101 Art. 113(a)(5)–1,[1] the Surrogate's appraisal was *prima facie* the fair market value of the stock in question at the time of the elder Plaut's death. There is no question as to the validity of this regulation. Williams v. Commissioner, 8 Cir., 44 F.2d 467. It was proper to admit in evidence the record of the proceedings before the Surrogate to ascertain the weight to be given to his valuation. The District Court was quite within its discretion in deciding that plaintiff failed to rebut the Surrogate's valuation of accounts receivable based on undisputed evidence in the record before him by merely showing that Lehn & Fink had written off very small amounts as bad debts in the years preceding 1915. The accounting treatment given overdue accounts may have little relation to their actual collectability and there was evidence that this was the case here. While there was no new testimony as to the value of the accounts before Judge Hincks there was such testimony before the Surrogate which evidence the Regulation made competent in the case at bar.

■ The District Court's choice of earnings period and capitalization rate was not clearly erroneous. It was not bound to follow the testimony of the plaintiff's expert. White & Wells Co. v. Commissioner, 2 Cir., 50 F.2d 120; Bryant v. Commissioner, 2 Cir., 76 F.2d 103; Rogers v. Helvering, 2 Cir., 107 F.2d 394. Plaintiff concedes that to prevail on this appeal he must establish not only that the District Court was wrong in its valuation but also the essential facts from which a correct determination might be made. Mahler v. Commissioner, 2 Cir., 119 F.2d 869, certiorari denied 314 U.S. 660, 62 S.Ct. 114, 86 L.Ed. 529. This he has failed to do for his expert's use of Lehn & Fink's earnings records was effectively shown to result in an unduly high valuation because he took earnings of 1915 as his criterion, which was an abnormally high year. See White & Wells Co. v. Commissioner, 2 Cir., 50 F.2d 120, 121.

It is true that in 1916 there was a still further increase in earnings over all former years, but we cannot see how this great increase in 1915 could have been anticipated at the time of the death of plaintiff's father for he appears to have been the mainspring of the business and his death might well have resulted in a recession in earnings. Whether, if we had been the finders of the facts, we would have entirely eliminated the increase of the 1915 over the 1914 earnings in computing the five year average, we need not say that hindsight required the inclusion of 1915 earnings at an increased amount. The probabilities were difficult to determine and proof by the plaintiff showing what part of the increase, if any, should be included in the average was lacking.

■ The plaintiff also introduced evidence of the value of listed stocks of corporations engaged in similar lines of busi-

---

1. Art. 113 (a) (5)–1. *"Basis of property acquired by bequest, devise, or inheritance.—*

     \*   \*   \*   \*   \*   \*   \*

"(c) *Fair market value.—*For the purposes of this article, the value of property as of the date of the death of the decedent as appraised for the purpose of the Federal estate tax or if the property is not appraised as of the date of death of the decedent for such purpose or if the estate is not subject to such tax, its value as appraised as of the date of the death of the decedent for the purpose of State inheritance or transmission taxes, shall be deemed to be its fair market value at the time of the death of the decedent."

ness which by § 501(k) of the Revenue Act of 1943, 26 U.S.C.A. § 811(k), ought to be considered in valuing unlisted securities such as those of Lehn & Fink and claims error because the District Court failed to give the value of those stocks sufficient weight. However, he did not show that the corporations offered by way of comparison had—like Lehn & Fink—suddenly increased their earnings in 1915 to double former amounts. Without such evidence their price times earnings and price times dividends ratios were not shown to be comparable to those of Lehn & Fink's and the statute did not require their consideration.

After the first decision by Judge Hincks in the court below the plaintiff was granted a reargument and on reargument he sought to reopen the case by introducing additional evidence to impeach the Surrogate's valuation. The plaintiff's offer of proof failed to show that this evidence was newly discovered and it appeared from the record that the proposed witness was present at the original trial and was not called by the appellant. Refusal to accept the proffered evidence was not error.

Affirmed.