ESTATE OF J. E. O'CONNELL, James
O'Connell, Executor,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 79–7090.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1980.

Decided Feb. 20, 1981.

James E. Merritt (argued), Benjamin J. Delancy, Morrison & Foerster, San Francisco, Cal., on brief for petitioner-appellant.

George L. Hasting, Jr., Washington, D. C., argued for respondent-appellee; Gilbert E. Andrews, Washington, D. C., on brief.

Before SNEED and ANDERSON, Circuit Judges, and EAST *, District Judge.

SNEED, Circuit Judge:

This case involves a dispute over the valuation for estate tax purposes of two blocks of stock in close corporations held by the decedent, J. E. O'Connell, at his death. One block is an 80% interest in R. V. Ranch Corporation (R.V.); the other is a 95% interest in Capri Corporation (Capri). The applicable code section is 26 U.S.C. § 2031. The appellant seeks to overturn the valuations fixed by the Tax Court. This court's jurisdiction lies under 26 U.S.C. § 7482 (1976). We affirm in part and reverse and remand in part.

## I.

### THE FACTS

Capri was a holding company whose assets consisted of various pieces of real estate, a portfolio of securities, several non-operating subsidiaries, and a 73% interest in Glacier General Assurance Company. The values of all of Capri's assets, other than its interest in Glacier General Assurance Company (Glacier), were stipulated between the parties. The dispute with respect to the Capri stock centers on the value of Capri's interest in Glacier, and on the method for

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

valuing Capri's stock relative to its net asset value. The Estate contends that Glacier should have been valued according to a formula which essentially computes its net asset value, whereas Commissioner-respondent contends that the Tax Court's reliance on a capitalization of 1972 earnings was proper. The Estate further contends that the Tax Court should have valued Capri's stock at a discount from its net asset value per share because of various factors that rendered its stock unmarketable. Commissioner contends that the Tax Court's finding, that all of Capri's assets other than its interest in Glacier were readily marketable and, therefore, not deserving of a discount, and that the value for Glacier already contained a discount for the unmarketability of Glacier, was correct and warranted the court's further finding that the proper value for Capri's stock was its undiscounted net asset value per share.

The disputed issue with respect to the R.V. stock is whether the Tax Court should have valued that stock at a discount from its net asset value per share because the stock was not readily marketable. Taxpayer contends that, because the Tax Court found that the highest and best use of the R.V. land was as an operating cattle ranch, and because that operation had shown a consistent history of losses and had no immediate prospect of profitable operation, and because of costs that would be incurred if the assets were liquidated, the Tax Court should have valued the R.V. stock at a discount from its net asset value per share. Commissioner contends that any potential purchaser would view the purchase of the estate's 80% interest in R.V. as equivalent to the purchase of an 80% interest in the underlying assets, and that, therefore, the Tax Court's denial of any discount for marketability was correct.

## II.

## HOLDING AND DISCUSSION

We hold that the Tax Court's valuation of Glacier is supported by the evidence. However, we further hold that the Tax Court erred in its interpretation of the legal effect of a contract restricting Capri's assets. That error requires reconsideration of the value of Capri's stock. Taxpayer's claim of error in the valuation of the R.V. stock, on the other hand, is without merit. We therefore affirm in part, reverse in part, and remand for reconsideration in light of this opinion.

### A. Valuation of Capri

### 1. Valuation of Glacier Stock

Taxpayer insists that four errors on the part of the Tax Court mar its valuation of Glacier: First, it erred in rejecting taxpayer's proposed method of valuation by net asset value. Second, even if the Tax Court's selection of a capitalized earnings approach to valuing Glacier were permissible, the court erred in basing that capitalization on only one year's earnings. Third, the trial court used clearly erroneous earnings figures for Glacier in applying its capitalization of earnings approach to the valuation of Glacier's stock. Fourth, the Tax Court erred by failing to follow uncontradicted testimony in the record to the effect that Glacier was a "one man" company. We shall discuss each of these alleged errors.

 *Method of Valuation.* Under this heading the taxpayer argues that its proposed method of valuation by net asset value was standard in the industry, and that, therefore, the court below erred in using another method. Although there is testimony in the record to support taxpayer's position, such testimony was given solely by Mr. Hayden, president of Glacier. R.T. at 198–203, 210–11, 227–30. Further, the statutory standard for evaluating closely held stock incorporates a number of alternative methods of valuation, and merely directs the trial court to consider all relevant methods. 26 U.S.C. § 2031(b) (1976); Rev.Rul. 59–60, 1959–1 C.B. 237. The applicable case law directs the trial court to consider all relevant information, but grants it broad discretion in determining what method of valuation most fairly represents the fair market value of the stock in issue in light

of the facts presented at trial. *Palmer v. Commissioner*, 523 F.2d 1308 (8th Cir. 1975); *Righter v. United States*, 439 F.2d 1204 (Ct.Cl. 1971); *Hamm v. Commissioner*, 325 F.2d 934 (8th Cir. 1963); *In re Nathan's Estate*, 166 F.2d 422 (9th Cir. 1948); *Richardson v. Commissioner*, 151 F.2d 102 (2d Cir. 1945); *Zanuck v. Commissioner*, 149 F.2d 714 (9th Cir. 1945); *Bank of California v. Commissioner*, 133 F.2d 428 (9th Cir. 1943). In light of the testimony of Commissioner's expert valuing the Glacier stock on the basis of capitalized earnings, R.T. at 320–21; Respondent's Exhibit (Resp.Ex.) F at 2–16 to 2–19, and of the wide discretion given the trial court to weigh the credibility of witnesses at trial and to determine the appropriate weight to give various methods of valuation, we do not believe the Tax Court erred in its choice of a method other than net asset value.

■ *Erroneous earnings figures.* Taxpayer claims that the trial court used clearly erroneous earnings figures for Glacier in valuing Glacier according to the capitalized earnings approach. This claim is based on the Tax Court's failure to fully adjust Glacier's statutory earnings to reflect the results of the adjustments required by the Montana Insurance Examination of Glacier's accounts as of December 31, 1972, and its failure to adjust Glacier's generally accepted accounting principles (GAAP) earnings at all to accord with that examination. The report of the taxpayer's expert contained an explanation of statutory accounting for insurance companies that indicated that there was a standard relationship between such statutory accounting and GAAP, but it did not provide the details required to transform one set of figures into the other. Pet.Ex. 11, app. X. To preserve his claim of error on appeal, taxpayer's burden was not only to show that the trial court's findings were incorrect, but to provide the information from which correct findings could have been made. *Plaut v. Munford*, 188 F.2d 543 (2d Cir. 1951); *see Mahler v. Commissioner*, 119 F.2d 869 (2d Cir.), *cert. denied*, 314 U.S. 660, 62 S.Ct. 114, 86 L.Ed. 529 (1941). Although there was some testimony by the taxpayer's expert

concerning the effect of the adjustments to Glacier's statutory earnings, taxpayer did not supply the figures that it now contends are correct nor did it supply the court below with sufficient information from which to derive correct figures. Taxpayer has not met his burden, and has, therefore, failed to preserve the correctness of the earnings figures for appeal.

■ *Use of one year's earnings.* Taxpayer insists that the Tax Court erred as a matter of law in basing its capitalization of Glacier's earnings on earnings of only one year. The applicable standard requires that courts use representative earnings freed of abnormal or non-recurring gains or losses. *Plaut v. Munford*, 188 F.2d 543 (2d Cir. 1951); *White & Wells Co. v. Commissioner*, 50 F.2d 120 (2d Cir. 1931). The purpose of requiring the use of representative earnings is to provide a reliable basis for predicting expected future earnings, which are the true indicators of present worth. Rev.Rul. 59–60, 1959–1 C.B. 237, 238–42. The question presented by taxpayer's claim is therefore whether or not Glacier's earnings in 1972 were representative. So long as the trial court's findings on that question are within the range suggested by the evidence, they will not be reversed unless clearly erroneous. *Palmer v. Commissioner*, 523 F.2d 1308 (8th Cir. 1975); *Grace Bros. v. Commissioner*, 173 F.2d 170 (9th Cir. 1949); *Zanuck v. Commissioner*, 149 F.2d 714 (9th Cir. 1945).

■ A careful review of the record convinces us that we cannot say that the Tax Court's finding was clearly erroneous. The earnings figures found by the Tax Court reflect dramatic increases in earnings on both a statutory and a GAAP basis in the years from 1968 to 1971, followed by a more moderate increase in 1972 on a GAAP basis and a moderate decline on a statutory basis. C.T. at 61. Commissioner's expert, who presented substantial qualifications to the court, Resp.Ex. F at Exhibit I, stated that Glacier's 1972 earnings were the most representative, *id.* at 2–16. Although the taxpayer's expert disagreed with that con-

clusion, the trial court was not bound to accept the testimony of taxpayer's experts where such testimony was not uncontradicted in the record. *See Lewis & Taylor, Inc. v. Commissioner,* 447 F.2d 1074 (9th Cir. 1971); *Grace Bros. v. Commissioner,* 173 F.2d 170 (9th Cir. 1949). The Tax Court had the opportunity to hear and evaluate the opposing experts. We have no definite and firm conviction that the Commissioner's expert was wrong.

*One man company.* Taxpayer asserts that the Tax Court erred by failing to follow uncontradicted testimony in the record to the effect that Glacier was a "one man" company. Both taxpayer's and Commissioner's experts agreed that any purchaser of Glacier would primarily be buying the skills of one man, Mr. Hayden. R.T. at 339, 358; *see* Resp.Ex. F at 2–11. The record shows experts of both sides agreeing that Mr. Hayden was responsible for Glacier's successful shifting among various lines of insurance to take advantage of changing profit opportunities, and that it was his wide knowledge of the insurance industry that made such shifts possible. R.T. at 339, 358; Resp.Ex. F at 2–11. Petitioner claims the court should have accorded him a further discount from the capitalized earnings value of Glacier to account for the risk any purchaser would take that Mr. Hayden would either leave Glacier or become so incapacitated as to be unable to provide the leadership that has created Glacier's successful earning record. The Tax Court saw the matter differently. It found that, although Mr. Hayden was an integral part of all Glacier's operations, he was primarily responsible for Glacier's reinsurance business, which had been phased out at the time of valuation. C.T. at 86–87. It, therefore, found that Glacier was not so dependent on Mr. Hayden's skills as to require a further discount for the thinness of Glacier's management. *Id.*

■ Although we may question the correctness of the Tax Court's evaluation of Mr. Hayden's precise importance to Glacier, we do not find clearly erroneous the court's holding that no further discount of the val-

ue of Glacier was needed to account for the thinness of its management. We so hold because the Commissioner's expert clearly took account of Mr. Hayden's importance in his evaluation of Glacier. The Tax Court's valuation of Glacier fell between that proposed by the taxpayer's expert and that proposed by the Commissioner's expert. This is within the range supported by the evidence. Therefore, although uncontradicted testimony in the record from unimpeached witnesses must be followed by the trial court, *Lewis & Taylor, Inc. v. Commissioner,* 447 F.2d 1074 (9th Cir. 1971); *Grace Bros. v. Commissioner,* 173 F.2d 170 (9th Cir. 1949), the Tax Court did not commit reversible error in its valuation of Glacier. *See Palmer v. Commissioner,* 523 F.2d 1308 (8th Cir. 1975); *Commissioner v. Belridge Oil Co.,* 267 F.2d 291 (9th Cir. 1959) (dictum).

## 2. *Valuation of Capri Stock*

■ *Discount for unmarketability.* With respect to stock of Glacier's parent, Capri, taxpayer contends that the Tax Court erred by not discounting the value of that stock from its net asset value per share to account for its unmarketability. This claim was rejected because the value of Capri's holding in Glacier, its only operating subsidiary, had already been discounted for lack of marketability, and because Capri's other assets were securities and real estate not deserving such a discount. C.T. at 90. Although the Tax Court has given marketability discounts in a wide range of circumstances, courts of appeal have rarely, if ever, found error in the failure to grant such a discount, *e. g., In re Nathan's Estate,* 166 F.2d 422 (9th Cir. 1948); *Richardson v. Commissioner,* 151 F.2d 102 (2d Cir. 1945), *cert. denied,* 326 U.S. 796, 66 S.Ct. 490, 90 L.Ed. 485 (1946). We will, therefore, not reverse the trial court's denial of such a discount unless clearly erroneous.

Moreover, although the expert testimony concerning the appropriateness of a marketability discount was conflicting, the testimony of Commissioner's expert was sufficient to insulate the Tax Court from clear

error. This expert testified that a buyer who was really interested in acquiring Glacier would find the remaining assets of Capri to be no obstacle. R.T. 334–35. Further, his report considered and rejected using a discount for unmarketability in valuing Capri's stock with the guidelines of Rev.Rul. 59–60, 1959–1 C.B. 237, specifically in mind. Resp.Ex. F at 3–6.

*Loan Transaction.* This transaction poses a difficult issue. The circumstances surrounding it must be set forth in some detail. Through its correspondent bank in Missoula, Montana, Seattle First National Bank loaned $4,700,000 to Mr. Hayden under an agreement whereby he was required to invest them in surplus certificates of Glacier of specified form. Pet.Ex. 11, app. VIII. The loan was guaranteed by Capri and secured by a pledge of the Glacier stock together with an agreement not to further encumber any of Capri's other assets. *Id.* In addition, Capri agreed not to sell any of its assets without Seattle First National Bank's consent, and not to pay any dividends or alter its capital structure. *Id.* Further, Glacier was required to deposit the proceeds of the loan, after being paid to it by Mr. Hayden for the surplus certificates, with Seattle First National Bank in certificates of deposit at a rate of interest 2% less than that on the loan to Mr. Hayden. The bank had the right to accelerate the due date of its loan to Mr. Hayden should Glacier allow the face amount of the certificates of deposit to fall below the balance outstanding on the loan. The loan could be prepaid without penalty. *Id.* The surplus certificates were authorized by Mont.Rev. Code Ann. § 40–4738 (1947), and contained a provision limiting Glacier's liability for their face amount to policyholder surplus in excess of $6,000,000. Pet.Ex. 11, app. VIII. The loan to Mr. Hayden was secured to increase Glacier's surplus so that it could continue to write new coverage while maintaining a good financial rating and providing adequate security to its policyholders. R.T. at 219–21. The Tax Court found that the transaction was one of form only which could be reversed at Capri's behest, and that, therefore, the restrictions embodied in the agreement, whereby Capri guaranteed the loan to Mr. Hayden, did not affect the value of Capri's stock. C.T. at 42–43.

Taxpayer contends that the Tax Court erred in so viewing the transaction. We agree. The scope of our review is not narrowly restricted in this instance. Interpretation of contracts and the evaluation of their effect under applicable state laws are questions of law reviewable on appeal. *See Neugass v. Commissioner,* 555 F.2d 322 (2d Cir. 1977) (review of interpretation of a will); *Sun Oil v. Commissioner,* 562 F.2d 258 (3d Cir. 1977); *cf. Helvering v. Tex-Penn Oil Co.,* 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937) (questions of law or of mixed fact and law subject to judicial review, and reviewing court may substitute its judgment for that of the board); *California v. Simon,* 504 F.2d 430 (Em.App. 1974) (finding of fact made under an erroneous view of controlling law not judged by the "clearly erroneous" standard); *Smallfield v. Home Insurance Co.,* 244 F.2d 337 (9th Cir. 1957) (findings of fact induced by error of law not binding on court of appeals). The problem presented by the Tax Court's analysis is that there are at least two approaches that might be used in valuing Capri's stock: First, one can assume that the loan is a real transaction and that it will remain outstanding until Glacier's earnings enable it to be repaid. In that case the restrictions associated with the loan are binding on Capri and reduce the value of its stock. On this assumption, the projection of Glacier's earnings, and hence its market value, are properly based on a continuation of its present course of business, which is made possible by the proceeds of the loan. Second, one can assume that the loan is merely a paper transaction reversible at will by the taxpayer. In that event one must assume that Glacier will write only that coverage that it would have written absent the higher surplus provided by the loan proceeds. Its earnings would be commensurably reduced, lowering the value of Capri's stock. But the restriction of Capri would be voidable at the will of any majority stockholder of Capri, and would not reduce the value of Capri's stock.

By adopting Glacier's 1972 earnings as representative for the purpose of valuing Glacier by capitalization of earnings, the Tax Court implicitly adopted the first of the preceding two approaches. That is indeed the realistic one. For what was the 2% interest cost being paid? Had Glacier not expected to profit from the increased coverage it was able to write because of the loan transaction, payment of the 2% interest cost would be irrational. Thus, the Tax Court's finding that the restrictions on Capri embodied in the loan transaction were of no effect is inconsistent and erroneous. We reverse and remand to the Tax Court with instructions to evaluate the effect of the restrictions on the value of Capri's stock. These restrictions are not illusory.

B. *Valuation of R.V.*

Taxpayer contends that, because it found that the highest and best use of the R.V. land was as an operating cattle ranch, the Tax Court erred in valuing the stock of R.V. at its net asset value per share. Taxpayer does not now contest the court's finding on the value of the R.V. land, but argues that a marketability discount should have been allowed in view of the expectation of continued losses from the ranching operations and the costs of any liquidation. As set forth with respect to the taxpayer's similar contention concerning the Capri stock, the standard governing this court's review of taxpayer's contention is that the trial court will be reversed only on a finding of clear error. In this instance the taxpayer claims a variance between the Tax Court's finding of the land's highest and best use and its finding of value. This contention ignores the market's ability to adjust the price of an asset to reflect the fact that, whatever that asset's future utility, its current highest and best use is one that loses money. There is no inconsistency between the two findings. Because the block of stock is a controlling one, any purchaser could liquidate the company and realize the net asset value. The Tax Court's finding was not error.

Affirmed in part; reversed in part.