**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 05 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ESTATE OF NATALE B. GIUSTINA, DECEASED, c/o Laraway Michael Giustina, Executor,<br><br>        Petitioner - Appellant,<br><br>  v.<br><br>COMMISSIONER OF INTERNAL REVENUE,<br><br>        Respondent - Appellee. | No. 12-71747<br><br>Tax Ct. No. 10983-09<br><br>MEMORANDUM[*] |

Appeal from a Decision of the
United StatesTax Court

Argued and Submitted March 5, 2014
Portland, Oregon
Submission Withdrawn March 6, 2014
Resubmitted December 1, 2014

Before:     GOODWIN and W. FLETCHER, Circuit Judges, and BLOCK,
Senior District Judge.[**]

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Frederic Block, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

The Estate of Natale B. Giustina appeals the Tax Court's conclusion that its 41.128% interest in Giustina Land and Timber Company Limited Partnership was worth $27,454,115 for estate tax purposes, rather than $12,678,117 as stated in the Estate's tax return.

We have jurisdiction under 26 U.S.C. § 7482. "We review the Tax Court's factual determinations, including valuation of assets . . ., for clear error." *Estate of Trompeter v. Comm'r*, 279 F.3d 767, 770 (9th Cir. 2002).

The Tax Court concluded that there was a 25% likelihood of liquidation of the partnership. It therefore gave a 25% weight to an asset-based valuation and a 75% weight to the valuation of the partnership as a going concern. Although the Tax Court recognized that the owner of the limited interest could not unilaterally force liquidation, it concluded that the owner of that interest could form a two-thirds voting bloc with other limited partners to do so, and assigned a 25% probability to this occurrence. This conclusion is contrary to the evidence in the record. In order for liquidation to occur, we must assume that (1) a hypothetical buyer would somehow obtain admission as a limited partner from the general partners, who have repeatedly emphasized the importance that they place upon continued operation of the partnership; (2) the buyer would then turn around and seek dissolution of the partnership or removal of the general partners who just

-2-

approved his admission to the partnership; and (3) the buyer would manage to convince at least two (or possibly more) other limited partners to go along, despite the fact that "no limited partner ever asked or ever discussed the sale of an interest." Alternatively, we must assume that the existing limited partners, or their heirs or assigns, owning two-thirds of the partnership, would seek dissolution. We conclude that it was clear error to assign a 25% likelihood to these hypothetical events. As in *Estate of Simplot v. Commissioner*, 249 F.3d 1191, 1195 (9th Cir. 2001), the Tax Court engaged in "imaginary scenarios as to who a purchaser might be, how long the purchaser would be willing to wait without any return on his investment, and what combinations the purchaser might be able to effect" with the existing partners. *See also Olson v. United States*, 292 U.S. 246, 257 (1934) (explaining in a condemnation case that, when a court estimates "market value," "[e]lements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable[,] should be excluded from consideration"). We therefore remand to the Tax Court to recalculate the value of the Estate based on the partnership's value as a going concern.

The Estate further claims that the Tax Court clearly erred by using pretax (non-tax-affected) cash flows for the going-concern portion of its valuation. The

-3-

Estate itself admits in its brief that "tax-affecting is . . . an unsettled matter of law."

We therefore cannot say that the Tax Court clearly erred in adopting a pretax rather

than a posttax methodology. Further, the Tax Court did not clearly err by using the

Commissioner's proposed 25% marketability discount rather than the Estate's

proffered 35% discount, *see, e.g.*, *Estate of O'Connell v. Comm'r*, 640 F.2d 249,

253 (9th Cir. 1981), especially considering that the Estate's expert acknowledged

that such discounts typically range between 25% and 35%.

We do, however, hold that the Tax Court clearly erred by failing to

adequately explain its basis for cutting in half the Estate's expert's proffered

company-specific risk premium. Even under the deferential clear error standard,

"[i]n drawing its conclusions . . . the Tax Court is obligated to detail its reasoning."

*Estate of Trompeter*, 279 F.3d at 770. We recognize that diversification of assets is

a widely accepted mechanism for reducing company-specific risk. However, the

Tax Court stated only that "[i]nvestors can eliminate such risks by holding a

diversified portfolio of assets," without considering the wealth a potential buyer

would need in order to adequately mitigate risk through diversification.

**REVERSED and REMANDED for recalculation of valuation.**