NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 21 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| ESTATE OF EVA FRANZEN KOLLSMAN, DECEASED, JEFFREY HYLAND, EXECUTOR, <br><br> Petitioner-Appellant, <br><br> v. <br><br> COMMISSIONER OF INTERNAL REVENUE, <br><br> Respondent-Appellee. | No.   18-70565 <br><br> Tax Ct. No. 26077-09 <br><br> MEMORANDUM[*] |

Appeal from a Decision of the United States Tax Court.

Argued and Submitted June 5, 2019
Portland, Oregon

Before:  MURGUIA and HURWITZ, Circuit Judges, and ZIPPS,[**] District Judge.

The Estate of Eva Franzen Kollsman appeals the Tax Court's determination

of the fair market value of two Old Master paintings, *Village Kermesse with Dance*

*Around the Maypole* (*Maypole*) and *Orpheus Charming the Animals* (*Orpheus*).  As

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The Honorable Jennifer G. Zipps, United States District Judge for the District of Arizona, sitting by designation.

a result of this determination, the Tax Court found there was a deficiency in estate tax due in the amount $585,836. The Estate also seeks a reduction in the interest owed on the deficiency. We have jurisdiction under 26 U.S.C. § 7482(a)(1) and affirm.

"[T]he Tax Court's determination of the value of property is a finding of fact, which we will reverse only for clear error." *Sammons v. Comm'r*, 838 F.2d 330, 333 (9th Cir. 1988) (citations omitted). We review issues of law de novo. *See Meruelo v. Comm'r*, 691 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted).

1. The Tax Court correctly applied the law. The Tax Court correctly concluded that the relevant value of the paintings was the fair market value on the valuation date, the time of Kollsman's death. *See* Treas. Reg. 20.2031-1(a), (b). The Tax Court also correctly concluded that "[f]air market value for this purpose is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *See* Treas. Reg. 20.2031-1(b).

2. The Tax Court further correctly recognized that the hypothetical buyer and seller are presumed to have reasonable knowledge of the relevant facts affecting the property's value. *See Ebben v. Comm'r*, 783 F.2d 906, 909 (9th Cir. 1986). Testimony from a preeminent conservator and the IRS's expert witness, Dr. Peter Cardile, supports the Tax Court's finding that as of the valuation date, the

hypothetical buyer would know that cleaning was "a well advised and low-risk undertaking." *See Doherty v. Comm'r*, 16 F. 3d 338, 340 (9th Cir. 1994); *see also Furstenberg v. United States,* 595 F.2d 603, 609 (Ct. Cl. 1979) (considering fact that "a prospective buyer could have ascertained that a skillful cleaning effort [of a painting] probably would have been successful."). Even the Estate's expert witness, George Wachter, observed that "under all the dirt the pictures seemed to be in reasonably good condition." The Tax Court also did not err in concluding that Wachter exaggerated the dirtiness of the paintings and the risk of cleaning them.

3.    The Tax Court did not improperly base its valuation on *Maypole's* sale price. Rather, in arriving at its valuation, the Tax Court primarily relied on Dr. Cardile's valuation. Moreover, the Tax Court did not err in finding that Wachter failed to explain the nearly fivefold increase in value between his valuation and the sale price. Although Wachter asserted that there was a surge in demand for Old Master paintings in 2009, the Estate failed to establish an increase in sales prices for individual paintings at Sotheby's in 2009. Additionally, Sotheby's Form 10K filed with the Securities and Exchange Commission for the relevant period contradicted Wachter's assertion.

4.    The Tax Court did not err in rejecting Wachter's opinion in part because he did not support his valuations with comparable sales data. Wachter downplayed the importance of comparables in assessing value and failed to include any in his

expert report. He testified that when he arrived at his valuations, he was not interested in comparables. At trial, Wachter indicated that he had reviewed comparables only after the IRS challenged his methodology.[1]

5. The Tax Court did not err in largely accepting Dr. Cardile's valuations. Dr. Cardile explained his methodology, reliance on comparables, and research about the paintings' conditions. Moreover, the Tax Court did not wholly accept Dr. Cardile's valuations, instead applying discounts for both paintings based on the evidence. *See Estate of O'Connell v. Comm'r,* 640 F.2d 249, 253 (9th Cir. 1981) (finding that "the Tax Court did not commit reversible error" in choosing a valuation "within the range supported by the evidence"). In its valuation, the Tax Court thoroughly considered the evidence, and its valuation plausibly flowed from the record.

6. We lack jurisdiction to reduce the amount of interest owed on the deficiency. Interest on a tax deficiency is mandated by statute, 26 U.S.C. § 6601(a), and may not be reduced by the Tax Court. *Comm'r v. McCoy,* 484 U.S. 3, 7 (1987). We only have jurisdiction to review the decisions of the Tax Court. 26 U.S.C. §

---

[1] To the extent the Estate frames the issue as arising under Federal Rule of Evidence 703, its argument fails. "Rule 703 permits the admission of otherwise inadmissible evidence upon which an expert properly relies for the purpose of explaining the basis of the expert's opinion." *Hudspeth v. Comm'r*, 914 F.2d 1207, 1215 (9th Cir. 1990) (citation omitted). There is no showing that the Tax Court found Wachter's reference to comparables inadmissible. Instead, the court concluded that Wachter did not rely on comparables in the first instance.

4

7482(a)(1). We are "not empowered to proceed further to decide other questions relating to interest and penalty—questions that were not presented, and could not possibly have been presented, to the Tax Court—or to grant relief that the Tax Court itself had no jurisdiction to provide." *McCoy*, 484 U.S. at 6–7 (holding that appellate court lacked jurisdiction to forgive interest on a tax deficiency).

**AFFIRMED.**