**Alden D. STANTON and Louise M. Stanton, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 14475.**

United States District Court
E. D. New York.

Aug. 31, 1960.

O'Connor & Farber, New York City, for plaintiffs; by Clendon H. Lee, New York City, of counsel.

Cornelius W. Wickersham, Jr., U. S. Atty. for the Eastern District of N. Y., Brooklyn, N. Y., by Charles K. Rice, Asst. Atty. Gen., Wayne G. Barnett, Atty., Dept. of Justice, Washington, D. C., for the United States.

BYERS, District Judge.

This case is before the court on the settlement of proposed findings as respectively submitted, pursuant to remand from the Supreme Court directed in its opinion filed June 13, 1960, in two cases, No. 376 and No. 546, C.I.R. v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

The latter is the instant cause, which was tried before the undersigned on October 29, 1958, as the result of which judgment was granted to the plaintiffs.

The action was brought to secure a refund of $15,056.29 paid as income tax by Mr. Stanton for the year 1943 (his wife is a nominal party only because of the filing of a joint return).

The sole question for decision was whether the sum of $20,000 voted to Mr. Stanton by the directors of Trinity Operating Company, Inc. on November 19, 1942 according to the terms of the following resolution, constituted a gift and was excludable as such from his federal income tax liability:

"Whereas Mr. Alden D. Stanton has tendered his resignations from all the offices he held under the Corporation of Trinity Church and its subsidiaries; and

"Whereas said resignations have been accepted, to be effective as of November 30, 1942;

"Be It Resolved that in appreciation of the services rendered by Mr. Stanton as Manager of the Estate and Comptroller of the Corporation of Trinity Church throughout nearly ten years, and as President of Trinity Operating Company, Inc., its subsidiary, a gratuity is hereby awarded to him of Twenty Thousand Dollars, payable to him in equal instalments of Two Thousand Dollars at the end of each and every month commencing with the month of December, 1942; provided that, with the discontinuance of his services, the Corporation of Trinity Church is released from all rights and claims to pension and retirement benefits not already accrued up to November 30, 1942."

. The case proceeded to trial as stated, and the only witnesses who testified were:

Woolsey A. Sheppard (deposition), a member of the Vestry of Trinity Church, and general counsel to both the Church and the Trinity Operating Company, at the period involved.

Frederick E. Hasler, a member of the Vestry, and Chairman of its Standing Committee in November of 1942.

Alden D. Stanton, the plaintiff.

In addition, there was documentary evidence, Plaintiffs' Exhibit 1 and Defendant's Exhibits A to H inclusive being directors' minutes of the Operating Company for October 14, 1942; October 28, 1942; October 30, 1942; November 5, 1942; November 19, 1942; November 23, 1942; December 28, 1942; January 8, 1943.

The foregoing constituted all the evidence in the case, and no suggestion has been made that it ought to be supplemented for present purposes.

The judgment in plaintiffs' favor was reversed by the Court of Appeals for the Second Circuit by decision of July 6, 1959, one judge dissenting (268 F.2d 727). The opinion of that court does not so state explicitly but obviously the finding made by this court was held to be clearly erroneous, as appears in the dissenting opinion.

Certiorari was granted December 14, 1959, 361 U.S. 923, 80 S.Ct. 294, 4 L.Ed. 2d 239 and the action of the Supreme Court has been stated. The majority opinion concludes with these words " * * * in No. 546, that the judgment of the Court of Appeals is vacated, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion." [363 U.S. 278, 80 S.Ct. 1201.]

It is clear that the original finding of this court therefore survives the action of the Court of Appeals, but was not deemed by the majority of the Supreme Court to be adequate to sustain the judgment based upon it. Thus: " * * * there comes a point where findings become so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standards may be * * *. It (this court's finding) cannot stand as a fulfillment of these requirements. It affords the reviewing court not the semblance of an indication of the legal standard with which the trier of the fact has approached his task."

In attempted obedience to the foregoing admonition, this opinion is being

filed in the effort to portray this court's understanding of the legal standard which points the way to decision, in view of the entire evidence in the case.

Counsel have kindly submitted the record before the Supreme Court, and all briefs filed in connection therewith. A careful study of the latter has been of much assistance in connection with the opinion of that court, which speaks for four of the justices; the fifth agrees that the finding itself was inadequate, but does not concur generally.

■ It must be said at the outset that the mere label of "gift" or "donation" accompanying a transfer of corporate funds or property to an employee or officer (or even an outsider, e. g., Duberstein No. 376) does not inevitably carry with the subject matter immunity from personal income tax on the part of the recipient.

■ The Government urged the Supreme Court as the opinion states, to rephrase the criterion in Bogardus v. Commissioner, 302 U.S. 34, 43, 58 S.Ct. 61, 82 L.Ed. 32, "in terms of 'motive' rather than 'intention.' * * * We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact— the dominant reason that explains his action in making the transfer. Further than that we do not think it profitable to go." [363 U.S. 278, 80 S.Ct. 1197.]

Obviously the neuter pronoun can be substituted for the personal one in the foregoing, in examining into corporate action.

The basic reason for the action of Trinity Operating Company cannot be discerned until the true nature of the corporation itself is clearly understood. This is the aspect of the case that renders it unique so far as the reported cases disclose.

Trinity Church in the City of New York was created in the days when New York was a British colony and litigation involving title to its properties has been of extraordinary amount " * * * involving various heirs so-called, of various personages claiming to be owners of various portions of Trinity property going back to colonial times I may say." (p. 30, Transcript of Record).

Thus it appears that this Church was founded many years before the federal government was established, although the exact date does not appear in the testimony.

That it is a Protestant Episcopal Church is a necessary inference from the fact that its affairs are and were directed by a Vestry. The several minutes of the directors of the Operating Company recite the presence of the Rector.

Nowhere does it appear in this case that the precise nature of Trinity Church as above described, has been questioned; rather it has been assumed.

■ This court takes judicial notice of the fact that under the Religious Corporations Law of the State of New York, McKinney's Consol.Laws, c. 51, the vestry of an Episcopal Church, namely the Rector, Wardens and Vestrymen, are the trustees of the Church property. So much being understood, it becomes clear that the Trinity Operating Company, Inc. was brought into existence "to handle the real estate of Trinity Church" (Record, p. 28). This was in about 1933 when Mr. Stanton succeeded Mr. Purdy as Comptroller of the Church. "Mr. Stanton was engaged to handle the real estate of Trinity Church as one of the departments of the whole corporation as distinguished from its religious end * * *."

At that time the real estate was encumbered in excess of two or three millions of dollars.

These figures suggest that the real estate holdings of the Church were probably of a value well in excess of the encumbrances, and that the management and operation thereof was an undertaking of considerable magnitude. For present purposes the Church and the Operating Company were one, and the action under review was therefore that of Trinity Church.

During the ensuing period of nearly ten years Mr. Stanton so discharged the duties committed to him, that on November 19, 1942 the resolution heretofore quoted was unanimously adopted by the directors of the Operating Company. His salary for the year 1942 was $22,500 and there is no suggestion that it was less than commensurate with his task. The witness Hasler testified (Record, p. 37): "We were all unanimous in wishing to make Mr. Stanton a gift. Mr. Stanton had loyally and faithfully served Trinity in a very difficult time. We thought of him in the highest regard.

"We understood he was going in business for himself.

"We felt that he was entitled to that evidence of good will."

The foregoing, coupled with the statements made by Mr. Sheppard in his deposition on this subject, enter into this "fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts   *   *   *" (186 F.Supp. 396) in this wise:

The Vestrymen of Trinity Church as trustees of its very considerable properties, were deeply concerned that their fiduciary duties should be rendered so as to meet the most exact requirements of a sensitive conscience that each is assumed to have possessed.

The individual to whom the supervisory task was committed performed so genuine a stewardship that they could not suffer the closing of his association with them to be marked by the mere adoption of formal resolutions.

Something more was owing to their own sense of the fitness of things, as this record is understood.

Such a situation seems to have been conceived of in Bogardus in the then Circuit Court of Appeals, 2 Cir., 88 F.2d 646, at page 648:

"We will assume that the gift would be nothing more, if for instance the donor believed that what he had paid in the past was the full measure of anything that the employee was then 'entitled to'; that in fairness he did not 'owe' a cent; and that anything he might give was not only beyond what the law would exact, but what the employee could in justice demand. Even so the past services would be the cause of the gift in the sense that except for them the donor would never have been moved to spontaneous generosity, but the gift would not pay for the services."

Such is the frame of mind that actuated the mental processes of the Vestry of Trinity Church, as this court perceives them, when the original finding was made, but which was insufficiently disclosed therein.

The reference in the opinion written for reversal (268 F.2d 727, 729) to "the success of his (Stanton's) real estate ventures" is unsatisfactory unless it is borne in mind that there is no suggestion in the testimony that Stanton conducted any real estate "ventures" in the sense of seeking a profit for the benefit of anyone whomsoever, save those to and among whom lay the ultimate spiritual ministry of the Church.

Thus it is clear to this court that the members of the Vestry of Trinity Church took the action under scrutiny because they were grateful to a man whom they had found to be a friend to them and also to the cause in which their talents were enlisted; who had enabled them the more adequately to perform the exacting duties of their office than had been possible before his advent as comptroller and active administrator of the parish realty holdings.

Thus the corporate action was not only the gratification of a kindly impulse present in the minds of the Vestry, but also the exercise of the considered judgment of fiduciaries concerning a proper and circumspect administration of corporate property entrusted to their care.

The action itself therefore did not differ in principle from a gift to a rector, a choir-master or a parish visitor who might be withdrawing from active participation in a common task.

The foregoing is written in answer to the Government's argument submitted with its proposed findings, that the members of the Vestry were either making a gift that was purely personal to them, and therefore converting Church property to their own use, or they were voting severance pay to Mr. Stanton. That argument is deemed to be fallacious for reasons that it has been the effort to demonstrate; and for the added reason that the manner in which the Vestry here functioned is scarcely to be determined by the test of whether we are dealing with a non-taxable gift, or a taxable severance pay.

The following is quoted from the dissent of Mr. Justice Brandeis in Bogardus (302 U.S. 34, at page 45, 58 S.Ct. at page 66, 82 L.Ed. 32):

"What controls is the intention with which payment, however voluntary, has been made. Has it been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears a tax. Has it been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt.

" * * * It was for the triers of the facts to seek among competing aims or motives the ones that dominated conduct. * * * "

 In my opinion the presence of good will, esteem and kindliness in the minds of the Vestry of Trinity Church is demonstrated by the evidence; and also the reason that called into existence that purpose, namely, something over and above a mere whim or transitory emotion, but was rather a deep sense of appreciation for the way in which Mr. Stanton had enabled the members of the Vestry to rise to the requirements of their high office.

It does not aid in the solution of the question here presented, to rely upon what has been written in cases that involve the taxable consequences flowing from the disposition of funds of a corporation conducted purely for the financial profit of stockholders.

It is in light of the foregoing opinion that the findings submitted by the plaintiff have been signed with one amendment, and those submitted for the defendant have not.